# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee

UNPUBLISHED
February 11, 2016

v

No. 323742
Wayne Circuit Court
LC No. 13-005690-FC

SHADELL KARVEZ LOVE,

Defendant-Appellant.

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree premeditated murder, MCL 750.316(1)(a), and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole for each first-degree murder conviction and two years' consecutive imprisonment for the felony-firearm conviction. We affirm.

## I. MOTION TO SUPPRESS

On appeal, defendant first argues that the trial court erred when it denied his motion to suppress statements he made after he invoked his *Miranda*[1] rights, because, according to defendant, he only reinitiated contact with the police based on his interactions with a family member who was allegedly acting on behalf of the police. We disagree.

We review a trial court's factual findings with respect to a motion to suppress for clear error. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001). A finding is clearly erroneous if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Muro*, 197 Mich App 745, 747; 496 NW2d 401 (1993). We review de novo a trial court's ultimate decision on a motion to suppress. *People v Lapworth*, 273 Mich App 424, 426; 730 NW2d 258 (2006).

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

-1-

Defendant brought a motion to suppress in the lower court, arguing that the statements he made in an interview were obtained in violation of his Fifth Amendment right to an attorney, which he had expressly invoked upon his arrest. Several hours after he had invoked his right, defendant's brother, Dante Love (Love), asked to speak with defendant. The police had picked up Love before defendant's arrest, and he was present for defendant's arrest and then agreed to ride around with the police in search of codefendant, Kevin Lewis. After an unsuccessful search, the police dropped Love off at his place of employment. Love voluntarily contacted the police after his shift and asked to meet with Sergeant William Hart, the officer in charge of the investigation. Love explained that he was a role model for defendant and wished to remind defendant of his spiritual obligation to tell the truth. Hart allowed Love to meet with defendant in a private interview room. Consistent with his expressed intention, Love told defendant that if Lewis was innocent, defendant "should confess because he should make things right within himself and with God." When the meeting ended, defendant told Hart that he was ready to make a statement.

Hart knew that defendant had already requested an attorney, and declined to take a statement. He explained to Love and defendant that Love could not waive defendant's right to an attorney, and told defendant that it would be inappropriate to take his statement until he had voluntarily approached the police and waived his rights. Later that afternoon, Hart received a phone call from a corrections officer explaining that defendant had asked to make a statement. Hart read defendant his rights a second time, and conducted an interview after obtaining a signed waiver.

The right against self-incrimination is guaranteed by both the United States and the Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 17. In *Miranda*, 384 US at 444, the United States Supreme Court established "procedural safeguards . . . to secure the privilege against self-incrimination" contained in the Fifth Amendment. Under *Miranda*, when a criminal defendant is subject to custodial interrogation, the defendant must be warned before any questioning that he has the right to remain silent, that any statement made may be used as evidence against him, and that he "has a right to the presence of an attorney, either retained or appointed." *Id*. The Fifth Amendment does not expressly guarantee a right to counsel. *Id*. at 466. Rather, "the Fifth Amendment right to counsel is a corollary to the amendment's stated right against self-incrimination." *People v Marsack*, 231 Mich App 364, 372–373; 586 NW2d 234 (1998). It is "designed to counteract the inherently compelling pressures of custodial interrogation . . . and to secure a person's privilege against self-incrimination by allowing a suspect to elect to converse with the police only through counsel." *People v Williams*, 244 Mich App 533, 539; 624 NW2d 575 (2001) (citations and quotation marks omitted).

Defendant does not dispute that he voluntarily initiated contact with Hart, or that he knowingly waived his *Miranda* rights at his interview. Rather, defendant claims that the police violated his Fifth Amendment rights when they sent Love, "an agent," in to speak with defendant after he invoked his right to counsel. Once an accused has been read his rights and expressed a desire to deal with the police only through counsel, he may not be subjected to further interrogation by the police until counsel has been made available or the accused initiates further communication. *People v McRae*, 469 Mich 704, 715; 678 NW2d 425 (2004), citing *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981). The prohibition against further police-initiated contact extends to private citizens working as agents of the police.

*McRae*, 469 Mich at 711. " 'If an individual is possessed of state authority and purports to act under that authority, his action is state action.' " *Id.*, quoting *Griffin v Maryland*, 378 US 130, 135; 84 S Ct 1770; 12 L Ed 2d 754 (1964). However, a person who is not a police officer and is not acting in concert with, or at the request of, the police is not bound by the Fifth Amendment and need not obtain a waiver before eliciting a statement. *People v Anderson*, 209 Mich App 527, 533-534; 531 NW2d 780 (1995).

After reviewing the record, we are not definitely and firmly convinced that the trial court made a mistake when it determined that Love was not acting as an agent of the police when he spoke with defendant the day after the shooting. Although there is some evidence that Love was helping the police with their attempt to locate the codefendant, there is no evidence to support an inference that Love was acting at the direction of, or in concert with, the police when he asked to meet with defendant. Love voluntarily contacted the police and asked to speak with his younger brother. There is no indication that Love wore a police uniform, carried a weapon, or possessed any authority. He did not have any information about the circumstances surrounding defendant's arrest when he spoke with defendant, and there is no evidence that Hart asked Love to address specific topics with defendant. Importantly, Love never suggested to defendant that he should waive his rights, or that his confession must occur without first consulting with an attorney.

In his brief on appeal, defendant cites a string of decisions from various jurisdictions comparing his situation to violations of a defendant's Sixth Amendment right to counsel when a private citizen, acting as a police agent, engages in discussions with a charged individual without the presence of an attorney. Courts apply a more stringent test to find a violation in the case of the deliberate elicitation of an incriminating statement by the police or an agent of the police after the defendant has been charged with a crime and invoked his Sixth Amendment right to counsel. *People v Riggs*, 223 Mich App 662, 676-678; 568 NW2d 101 (1997). Defendant argues that the Fifth Amendment right to counsel during custodial interrogation is protected with the same force as the Sixth Amendment right to counsel.

Defendant mischaracterizes the law, and his cited cases are inapplicable here. The United States Supreme Court and courts of this state have repeatedly distinguished between the Fifth and Sixth Amendment rights to counsel and have applied separate standards of review.[2] The analysis here is not, as defendant argues, the same as it would be given an alleged Sixth

---

[2] See, e.g., *Fellers v United States*, 540 US 519, 523-524; 124 S Ct 1019; 157 L Ed 2d 1016 (2004) ("We have consistently applied the deliberate-elicitation standard in subsequent Sixth Amendment cases . . . and we have expressly distinguished this standard from the Fifth Amendment custodial-interrogation standard"); *Williams*, 244 Mich App at 538-539 ("[T]he Fifth Amendment right to counsel during a custodial interrogation serves an entirely different purpose than the Sixth Amendment right to counsel at trial"); *Marsack*, 231 Mich App at 372 (explaining that the Fifth Amendment right to counsel is distinct and not necessarily coextensive with the right to counsel afforded criminal defendants under the Sixth Amendment).

Amendment[3] violation. In any case, the determination of whether Love acted as an agent of the police would not change with a Sixth Amendment analysis. The difference lies only in the circumstances under which the challenged statements were made.

The protections afforded by the *Miranda* warnings, including the Fifth Amendment right to counsel, pertain only to custodial interrogations. *Anderson*, 209 Mich App at 532. Interrogation, for purposes of *Miranda*, "refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 532-533, citing *Rhode Island v Innis*, 446 US 291, 300; 100 S Ct 1682; 64 L Ed 2d 297 (1980). Even if Love had been acting as an agent of the police, there is no indication that his conversation with defendant included statements "reasonably likely to elicit an incriminating response." Love testified that he merely spoke with defendant about his spiritual beliefs, reminding defendant that he must tell the police officers the truth about what happened. He did not ask defendant about the shooting or suggest to defendant that he should confess unless defendant thought he was guilty. Indeed, Love testified that, even after his discussion with defendant, he did not know what had happened and did not have information from defendant about the crimes. Without an "interrogation," there can be no violation of the Fifth Amendment right to counsel.

Further, defendant has not argued that he involuntarily reinitiated contact with the police several hours after his meeting with Love, or that he did not waive his *Miranda* rights at the subsequent interview with Hart. When a suspect affirmatively reinitiates contact with the police after invoking his Fifth Amendment right to counsel, any statements made thereafter by the suspect are admissible unless they were not "voluntarily, knowingly, and intelligently made." *People v Tanner*, 496 Mich 199, 208-209; 853 NW2d 653 (2014) (citation and quotation marks omitted). Defendant does not dispute that he reinitiated contact with Hart several hours after his discussion with his brother, indicating his intent to make a statement. In fact, defendant attempted to reinitiate contact immediately after his conversation with Love, but Hart refused to take defendant's statement at that time. Hart explained to defendant that, because he had already invoked his right to an attorney, it would be inappropriate for Hart to conduct an interview until he was sure that defendant had voluntarily chosen to waive that right. Nor does defendant dispute the fact that, at the beginning of the challenged interview, Hart again read defendant his *Miranda* rights and obtained defendant's written waiver. Indeed, defendant concedes on appeal that his waiver was knowing and voluntary.

Defendant's Fifth Amendment right to counsel claim necessarily fails because defendant has failed to show that Love was acting as an agent of the police and because defendant does not dispute that he voluntarily reinitiated contact with the police and executed a subsequent *Miranda* waiver. Therefore, the trial court did not err when it denied defendant's motion to suppress.

---

[3] Defendant has not raised a challenge under the Sixth Amendment, and indeed could not because the challenged statements were made before defendant was charged with a crime. See *People v Smielewski*, 214 Mich App 55, 60; 542 NW2d 293 (1995) ("The Sixth Amendment right . . . attaches only at or after adversarial judicial proceedings have been initiated.").

## II. JURY INSTRUCTIONS

Next, defendant argues that the trial court erred when it failed to include standard jury instruction M Crim JI 3.20 in its instructions, and instructed the jury that its verdicts on all three counts of first-degree premeditated murder had to be consistent. Although we agree with defendant's argument in part, defendant is not entitled to relief on this issue.

Defendant did not object to the jury instructions below, so his claims of error are unpreserved.[4] *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). We review unpreserved claims of instructional error for plain error affecting substantial rights. *People v Young*, 472 Mich 130, 135, 143; 693 NW2d 801 (2005). To satisfy the plain error standard, a defendant must show (1) an error, (2) that the error was clear or obvious, and (3) that the error affected his substantial rights by causing him prejudice. *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290, aff'd 485 Mich 868 (2009). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. at 197.

Defendant first argues that the trial court erred when it failed to include M Crim JI 3.20, or any variation of it, in its final instructions to the jury. M Crim JI 3.20 is "Single Defendant—Multiple Counts—More Than One Wrongful Act," and states the following:

> (1) The defendant is charged with ___ counts, that is, with the crimes of ___ and ___. These are separate crimes, and the prosecutor is charging that the defendant committed both of them. *You must consider each crime separately in light of all the evidence in the case.*
>
> (2) You may find the defendant guilty of all or [any one / any combination] of these crimes [, guilty of a less serious crime,] or not guilty. [Emphasis added.]

Defendant correctly notes that the Michigan Supreme Court mandated the use of the Michigan Model Criminal Jury instructions in each action for which they are "applicable" and "accurately state the applicable law." MCR 2.512(D)(2).

Although M Crim JI 3.20 accurately stated the applicable law in defendant's case, defendant fails to acknowledge that MCR 2.512 only makes the reading of Model Criminal Jury Instructions mandatory when "they are requested by a party." MCR 2.512(D)(2)(c). There is no indication that defendant ever specifically requested M Crim JI 3.20, or objected to the absence of the instruction after having a chance to review the final instructions. On at least two occasions, the trial judge discussed his proposed final jury instructions with counsel in defendant's presence, and, after lengthy discussion, defense counsel indicated that she had no

---

[4] We note that defendant did not waive these issues because neither he nor his trial counsel ever expressly approved of the instructions. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

further objections to the trial judge's final instructions. Because neither party requested the use of M Crim JI 3.20, the trial court did not err by failing to give that model instruction at trial.

Although defendant's first claim of instructional error fails, his claim that the trial court erred when it improperly instructed the jury that its verdicts on all three murder counts must "obviously" be consistent has some merit. "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). Jury instructions must include all of the elements of the crime charged, and "must not exclude material issues, defenses, and theories if the evidence supports them." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). Jury instructions must be read in their entirety to determine if there is an error that requires reversal. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). Even when imperfect, jury instructions are not erroneous as long as they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001).

When read in their entirety, we are not convinced that the jury instructions provided at defendant's trial fairly presented the issues and sufficiently protected defendant's rights. The verdict form clearly listed "Guilty 1st Degree premeditated Murder," "Guilty 2nd Degree Murder," and "Not Guilty," as options for each of the three murder counts, which directed the jury to choose only one verdict for each separate crime. When the trial judge addressed the verdict form, he explained the different elements necessary for a finding of guilty of first-degree premeditated murder, guilty of second-degree murder, or not guilty, specifically instructing the jury that there were three separate voting options for each count. However, the trial judge added that "[o]bviously they have to be the same result for each of the three victims." This is a mischaracterization of the law.

It is basic to our criminal jurisprudence that, to sustain a conviction, the prosecution must prove each element of every charged crime beyond a reasonable doubt. *People v Allen*, 466 Mich 86, 88-90; 643 NW2d 227 (2002). The judge's instruction encouraged the jurors to ignore this standard and, having found defendant guilty of first-degree premeditated murder of one individual, automatically render a guilty verdict for the other two counts without properly considering whether each element of all three had been proven beyond a reasonable doubt. The principle that jurors must separately consider each charged crime to find each element proven beyond a reasonable doubt is especially important in cases like this, where the jury was asked to consider lesser-included offenses. In such cases, the presence or absence of a single element might alter the jury's verdict on individual counts. Our courts have stated that "a jury instruction that improperly omits an element of a crime amounts to a constitutional error." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Further, the trial judge's instructions inappropriately implied that the jury was required to render consistent verdicts. Contrary to that implication, Michigan courts have repeatedly held that a jury in a criminal case may render inconsistent verdicts as between counts involving a single defendant. *People v Torres*, 452 Mich 43, 75; 549 NW2d 540 (1996); *People v Lewis*, 415 Mich 443, 450-453; 330 NW2d 16 (1982).

The judge's erroneous instruction might ordinarily be cured by a reading of M Crim JI 3.20, which directs jurors that they "must consider each crime separately in light of all the evidence in the case" and "may" find the defendant guilty of all or any combination of the charged crimes, but, as previously discussed, the trial court did not read this model instruction at defendant's trial. Thus, although the trial court did not commit reversible error when it neglected to read M Crim JI 3.20, it missed its opportunity to correct any misunderstanding inherent in its statement regarding the consistency of the verdicts. Therefore, the trial court plainly erred when it told the jurors that their verdict must be the same for each of the three first-degree murder counts.

Although defendant has established plain error on the part of the trial court, he has not shown that the plain error was prejudicial. Defendant was convicted of three counts of first-degree premeditated murder, for which the mandatory sentence is life without the possibility of parole. MCL 750.316(1)(a). Defendant's sentence would therefore be exactly the same had he been convicted of only one count of first-degree premeditated murder, rather than three. Based on the trial court's improper instruction, we cannot conclude that the jury would have convicted defendant on all three counts. It would have been possible for the jury to find defendant guilty of one count of first-degree premeditated murder and not guilty of two, or to find defendant guilty of a lesser included offense on one or two counts. However, the jurors' consistent "guilty" verdict on all three counts indicates that they must have found that at least one count of first-degree premeditated murder was proven beyond a reasonable doubt. Defendant's sentence on that count would still be life without the possibility of parole. Because defendant has not established prejudice resulting from this unpreserved error, his claim necessarily fails.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola