PEOPLE v ANDERSON

Docket No. 154761. Submitted January 5, 1995, at Detroit. Decided
    April 3, 1995, at 9:20 A.M. Leave to appeal sought.

    Robert D. Anderson was convicted by a jury in the Oakland
        Circuit Court, Rudy J. Nichols, J., of first-degree murder,
        assault with intent to commit murder, and two counts of
        possession of a firearm during the commission of a felony. The
        trial court, following an evidentiary hearing, held that testi-
        mony concerning a statement given by the defendant to a
        supervisor at a South Carolina juvenile correction facility was
        admissible despite the fact the defendant had not been given
        the warnings required by *Miranda v Arizona,* 384 US 436; 86 S
        Ct 1602; 16 L Ed 2d 694 (1966), because the statement was
        voluntary under the totality of the circumstances. The court
        also permitted the admission of testimony by the police officers
        who arrived at the scene of the crime concerning the state-
        ments of one of the victims of the shooting about the identity of
        the person who had shot him. The defendant appealed.

        The Court of Appeals *held:*

        1. While the defendant's statement clearly was made while
        he was in a custodial setting, it having been made while he was
        being held in a juvenile detention facility in South Carolina on
        an unrelated South Carolina charge, it was not elicited as the
        result of custodial interrogation. The testimony presented at
        the evidentiary hearing clearly establishes that the defendant
        initiated the conversation with the correction supervisor and
        volunteered the statement concerning his involvement with the
        Michigan homicide. Further, because the correction supervisor
        had no authority to arrest or detain anyone and was not shown
        to be acting at the behest of the police, the giving of the
        statement can not be said to have been initiated by the police.
        Because there was no police interrogation, there was no need to
        give the defendant *Miranda* warnings. Accordingly, the trial
        court properly permitted the admission of the testimony con-
        cerning the statement made to the juvenile correction supervi-
        sor, albeit for the wrong reason.

        2. Although the question whether the trial court abused its
        discretion in admitting testimony concerning the statements
        made by the victim to the police at the scene of the crime has

not been preserved for appellate review, a review of the record shows that the testimony was admissible under the excited utterance exception to the hearsay rule.

3. The trial court did not abuse its discretion in admitting a black-and-white photograph showing a pool of blood at the scene of the crime. The photograph is not particularly gruesome and was relevant to the issue of premeditation and deliberation.

4. There was sufficient evidence to permit a rational trier of fact to find that all the elements of first-degree murder were proven beyond a reasonable doubt. Accordingly, the trial court properly denied the defendant's motion for a directed verdict with respect to the murder count.

5. The question whether the trial court erred in denying the defendant's motion for a directed verdict with respect to the assault count was abandoned by reason of the defendant's failure to argue the merits of the issue in his brief on appeal.

6. The question whether a sentence the defendant received in a separate prosecution is proportionate can not be raised in this appeal, the panel in this appeal being without jurisdiction to consider that question.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Anica Letica,* Assistant Prosecuting Attorney, for the people.

*Michael J. McCarthy, P.C.* (by *Michael J. McCarthy*), for the defendant.

Before: JANSEN, P.J., and MICHAEL J. KELLY and HOOD, JJ.

JANSEN, P.J. Following a jury trial in the Oakland Circuit Court, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to commit murder, MCL 750.83; MSA 28.278, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was subse-

quently sentenced to the mandatory terms of two years' imprisonment for the convictions of felony-firearm, the mandatory term of life imprisonment without parole for the conviction of first-degree murder, and life imprisonment for the conviction of assault with intent to commit murder. Defendant appeals as of right and we affirm.

This case arises out of the shootings of Donald Davis and Rhonda Welch on August 12, 1990, in the City of Pontiac. Pontiac police officers James Courtney and James Martinez responded to a 911 trouble call shortly after 11:00 P.M. When they arrived at 436 Erwin Street, Courtney saw Davis propping himself up on one arm and waving his other arm. Davis was bleeding and was very excited and nervous. Davis told the officers that he had been shot and that his wife, Welch, had also been shot and was still in the house. Courtney testified that Davis told him that Robert Adams had shot him, while Martinez testified that Davis stated that "Little Rob" had shot him. Police officer Valer Gross arrived shortly after Courtney and Martinez. Gross testified that Davis told him that "Little Rob, Robert Adams" had done this to him.

Courtney and Martinez found Welch in a bedroom in the house. She was already dead at the time and was bleeding from her head and left hand. The medical examiner who performed the autopsy, Dr. Linda Biedrzycki, testified that the cause of death was multiple gunshot wounds. One wound was to the right side of Welch's head, one wound was to the left side of her chest, and the third wound was to the left hand. Davis survived his three gunshot wounds, but he died of a drug overdose before trial.

Sherrie Williamson, a juvenile correction officer supervisor in South Carolina, testified that defen-

dant spoke to her about the shootings. Defendant was being held in a juvenile detention facility in Columbia, South Carolina, on April 27, 1991, when he told Williamson his true name and age and that he had escaped from a facility in Michigan where he had been sent for killing two people. Defendant told Williamson that he would rather be in Michigan to be near his family. On April 28, 1991, defendant admitted to Ryan Alexander, a social worker at the detention facility, that he had been involved in the shootings of two people in Pontiac, Michigan.

Defendant now raises five issues on appeal. We do not find any issue to require reversal.

I

Defendant first argues that the trial court erred in admitting his statement made to Sherrie Williamson. It is defendant's contention that Williamson was a law enforcement officer for purposes of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and that Williamson was required to give defendant *Miranda* warnings before eliciting the statement. We hold that while the trial court did not employ the correct analysis, it reached the proper decision. The trial court did not err in admitting the statement, because there was no custodial interrogation as contemplated by *Miranda.* Therefore, Williamson was not required to give defendant *Miranda* warnings before defendant gave his statement.

At the evidentiary hearing, Williamson testified that she is a juvenile correction officer supervisor in South Carolina. On April 27, 1991, defendant requested to see her. Defendant was brought to Williamson's office. According to Williamson, defendant shared the information, and she did not

ask him any questions. Williamson reduced defendant's statement to writing. Defendant told Williamson that his real name was Robert Anderson (not Marco Smith) and he told her of identifying scars that he had. Defendant also told Williamson who his parents were, that he was eighteen years old (not thirteen years old), and that he was from Pontiac, Michigan. Defendant said that he had run away from a facility in Michigan and that he had killed two people in Pontiac. Defendant said that he wanted to return to Michigan to be closer to his family and because he did not wish to be moved around to various detention centers in South Carolina.

At the hearing, defendant testified that he did have a conversation with Williamson on April 27, 1991, in her office at the juvenile detention center. He told her that he was wanted in Michigan for criminal accusations, but he denied giving Williamson any details of the crimes. Defendant stated that he spoke with Williamson for thirty to forty-five minutes. It is undisputed that Williamson did not advise defendant of any *Miranda* warnings before he gave the statement.

The trial court ruled that, assuming that Williamson was a police officer and that there was a custodial setting, the statement was admissible because the statement was voluntarily made under the totality of the circumstances. The trial court's analysis was erroneous, because where there is a custodial interrogation—that is, where *Miranda* warnings must be given—the failure to give *Miranda* warnings requires suppression of the statement, except that the statement can be used for impeachment purposes. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971); *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975). Thus, the trial court should have deter-

mined whether it was necessary for Williamson to have given defendant *Miranda* warnings before defendant gave his statement.

The critical issue to be resolved is whether there was a custodial interrogation to trigger the requirements of *Miranda.* It is now axiomatic that *Miranda* warnings need only be given in cases involving custodial interrogations. *People v Hoffman,* 205 Mich App 1, 8; 518 NW2d 817 (1994). Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody. *Illinois v Perkins,* 496 US 292, 296; 110 S Ct 2394; 110 L Ed 2d 243 (1990). As the Supreme Court has explained, however, volunteered statements of any kind are not barred by the Fifth Amendment and are admissible. *Miranda, supra,* p 478; *Rhode Island v Innis,* 446 US 291, 300; 100 S Ct 1682; 64 L Ed 2d 297 (1980). Thus, the procedural safeguards outlined in *Miranda* are required where the suspect is in custody and is subjected to interrogation. " 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.*

There can be little question that defendant was in custody for purposes of *Miranda.* That is, defendant, who was detained in a juvenile facility in South Carolina on an assault conviction, was certainly in custody or otherwise deprived of his freedom in a significant manner. *People v Hill,* 429 Mich 382, 399; 415 NW2d 193 (1987).

Defendant, however, was not subjected to an interrogation. Interrogation, for purposes of *Miranda,* refers to express questioning or its functional equivalent. In other words, interrogation refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an

incriminating response from the suspect. *Innis, supra,* p 301. At the evidentiary hearing, Williamson testified that she did not ask defendant any questions and that she did not ask any follow-up questions regarding his identity. Defendant testified that he could not remember if Williamson asked him any questions. Further, it was defendant who initiated the conversation, because he requested to speak with Williamson. Defendant was brought to Williamson's office, and he shared the information with her. Under these circumstances, there is no indication that Williamson asked any questions, nor were there any words or actions by Williamson that she should have known would reasonably likely have elicited an incriminating response.

Further, the statement was not initiated by the police. This distinction is critical because constitutional protections apply only to governmental action. *Grand Rapids v Impens,* 414 Mich 667, 673; 327 NW2d 278 (1982). Thus, a person who is not a police officer and is not acting in concert with or at the request of the police is not required to give *Miranda* warnings before eliciting a statement. *Id.* Accordingly, it has been held that private security guards not acting at the instigation of the police or functioning with their assistance or cooperation need not give *Miranda* warnings before eliciting an inculpatory statement, *Impens, supra,* pp 677-678, and that a Department of Social Services caseworker who was not charged with the enforcement of criminal laws and was not acting at the behest of the police was not required to advise the defendant of his *Miranda* rights, *People v Porterfield,* 166 Mich App 562, 567; 420 NW2d 853 (1988). Further, the Supreme Court has held that *Miranda* warnings are not required where the suspect is unaware that he is speaking to an

undercover law enforcement officer (posing as a prison inmate) and gives a voluntary statement. *Perkins, supra,* p 294. The Supreme Court has also held that the admissions made to a probation officer concerning a crime unrelated to that for which the probationer was on probation were admissible in the subsequent prosecution, notwithstanding the probation officer's failure to warn the probationer of his rights against self-incrimination, where there was no evidence that the incriminating evidence was compelled. *Minnesota v Murphy,* 465 US 420; 104 S Ct 1136; 79 L Ed 2d 409 (1984). The Supreme Court specifically held, inter alia, that the defendant was not in custody for purposes of *Miranda* where he met in the office of the probation officer. *Murphy, supra,* p 430.

In this case, Williamson testified that she is a juvenile correction officer supervisor and that she is a State of South Carolina employee. However, Williamson does not carry a badge, does not carry any type of weapon, and does not wear a uniform. Her duties do not include the interrogation of criminal suspects. She does not have the authority to arrest or detain anyone. There was no evidence that Williamson was working at the behest of the police. Thus, contrary to defendant's assertion, Williamson is not a police officer for the purposes of *Miranda.* Therefore, Williamson was not required to give defendant his *Miranda* warnings. *Porterfield, supra.*

We conclude that there was no police-initiated interrogation necessary to implicate the giving of *Miranda* warnings in this case. Therefore, Williamson's failure to give defendant *Miranda* warnings did not render his statement involuntary. Rather, the record indicates that defendant's statement was freely and voluntarily given without any compelling influences. *Perkins, supra,* p 297. De-

fendant's statement was properly admitted at trial.

II

Defendant next argues that the trial court abused its discretion in admitting Davis' statement pursuant to the excited utterance exception to the hearsay rule. MRE 803(2). We initially note that defendant has failed to provide this Court with a copy of the April 15, 1992, hearing at which he allegedly objected to the police officers' testimony concerning Davis' statement. Defendant did not renew the objection at trial. Normally, failure to provide this Court with the relevant transcript, as required by MCR 7.210(B)(1)(a), constitutes a waiver of the issue. *People v Wilson,* 196 Mich App 604, 615; 493 NW2d 471 (1992). This is because an appellate court is unable to review the party's objection and the trial court's reason for the decision.

In any event, we find no abuse of the trial court's discretion on the basis of the record before us. A review of the police officers' testimony indicates that the statement made by Davis when the officers arrived at his house shortly after the shootings properly was admitted pursuant to the excited utterance exception. MRE 803(2). Davis' statement clearly related to a startling event, he and Welch had just been shot, and Davis was under the stress of excitement caused by the event or condition. According to the officers, Davis was nervous, very excited, and bleeding when the officers arrived. Further, there was independent evidence of the startling event from the officers' testimony that they observed that Davis was bleeding and that Welch had been shot in the house, was also bleeding, and had no pulse when they

found her. *People v Burton,* 433 Mich 268; 445 NW2d 133 (1989). Davis' statement to the police was properly admitted under the excited utterance exception to the hearsay rule. *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979); *People v Houghteling,* 183 Mich App 805, 807-808; 455 NW2d 440 (1990).

III

Defendant next argues that the trial court abused its discretion in admitting a photograph showing a pool of blood in the house. Defendant contends that the probative value of the photographic evidence was substantially outweighed by the danger of unfair prejudice. MRE 403.

The admission of photographic evidence is reviewed for an abuse of discretion. *People v Coddington,* 188 Mich App 584, 598; 470 NW2d 478 (1991). Photographs are admissible if they are substantially necessary or instructive to show material facts or conditions. *People v Falkner,* 389 Mich 682, 685; 209 NW2d 193 (1973). Photographs are not inadmissible merely because they may be gruesome and shocking. However, the trial court should exclude those that could lead the jury to abdicate its truth-finding function and convict on passion alone. *Coddington, supra,* p 598.

We have reviewed the black-and-white photograph in question and conclude that the trial court did not abuse its discretion in admitting it. The photograph is not particularly gruesome or shocking, but shows a large amount of blood from Welch's wounds on carpeting and some bullet casings near the blood. This evidence was relevant to the issue of premeditation and deliberation. *Coddington, supra,* pp 598-599; *Hoffman, supra,* p 19.

IV

Defendant next contends that the trial court erred in denying his motion for a directed verdict on the charges of first-degree murder and assault with intent to commit murder. A court assesses the merits of a motion for a directed verdict through consideration of the evidence presented by the prosecution in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime had been proven beyond a reasonable doubt. *People v Jolly,* 442 Mich 458, 466; 502 NW2d 177 (1993). We believe that sufficient evidence was presented to permit a rational trier of fact to find that the elements of first-degree murder were proven beyond a reasonable doubt.

In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Schollaert,* 194 Mich App 158, 170; 486 NW2d 312 (1992). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *Id.* Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. *Id.*

The evidence indicates that Davis told Gross that after he let defendant into the house, defendant produced a gun and attempted to make Davis and Welch lie on the floor. When they refused, defendant shot Welch in the head and then shot

Davis. The medical examiner testified that Welch was shot in the head, in the chest at close range, and in the left hand. The wound to the left hand was characterized as a defense wound, as if Welch may have been trying to push the muzzle of the gun away. In his statement to Williamson and Alexander, defendant admitted shooting two people in Pontiac. This evidence, and all reasonable inference drawn therefrom, is sufficient to establish the elements of first-degree murder.

Although defendant, in his statement of questions presented, raises the issue whether the motion for a directed verdict regarding the charge of assault with intent to commit murder should have been granted, he does not argue the merits of this issue in his brief. We, therefore, consider this issue to be abandoned. *Froling v Carpenter,* 203 Mich App 368, 373; 512 NW2d 6 (1994).

v

As his final issue, defendant argues that sentences he received in a separate case violate the principle of proportionality.[1] We do not have jurisdiction to decide this issue. The order appealed from in this case involves only lower court number 92-114972-FC. In that case, defendant was convicted of first-degree murder, assault with intent to commit murder, and two counts of felony-firearm. Thus, we have jurisdiction only to decide any issues relating to the order appealed from in lower court number 92-114972-FC, and not issues arising out of a different lower court case. MCR 7.203(A) (1).

For the benefit of defendant, we would find that

---

[1] We note that the sentences to which defendant now refers were affirmed by a different panel of this Court. *People v Anderson,* unpublished memorandum opinion of the Court of Appeals, decided July 15, 1994 (Docket No. 154760).

the sentences he received in the instant case do not violate the principle of proportionality. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). At the time of sentencing in the instant case, defendant was only nineteen years old. Yet, he had already had the following convictions as an adult: first-degree murder, assault with intent to commit murder, assault with intent to kill, assault and battery, assault with intent to do great bodily harm, three counts of felony-firearm, delivery of less than fifty grams of a controlled substance, and two counts of assault on a prison employee. As a juvenile, defendant had a conviction of receiving and concealing stolen property, various larcenies, and truancy from school and home. Defendant's sentences in the instant case for first-degree murder and felony-firearm are statutorily mandated. See MCL 750.316; MSA 28.548 and MCL 750.227b; MSA 28.424(2). It would be an understatement to say that, considering defendant's extremely violent background and the brutal nature of the crimes involved, defendant's life sentence for assault with intent to commit murder does not violate the principle of proportionality.

Affirmed.