File Name: 11a0861n.06

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 09-1975

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JEFFREY TITUS,

    Petitioner-Appellant,

v.

ANDREW JACKSON,

    Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____ /

Before:      BATCHELDER, MARTIN, and KETHLEDGE, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. Jeffrey Edward Titus, a state inmate in Michigan, appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Titus, who was sentenced to life imprisonment for his conviction in Michigan state court on two counts of first degree murder and two counts of felony firearm, argues on appeal that the state court decision violated his due process rights because the prosecution failed to present sufficient evidence at trial to establish premeditation, an essential element of first degree murder. For the following reasons, we **AFFIRM**.

    The thorough and well-reasoned district court opinion provides a detailed summary of the factual and procedural background of this case. *See Titus v. Jackson*, No. 06-10770, 2009 WL 1803209 (E.D. Mich. June 24, 2009). We summarize the relevant facts.

On November 17, 1990, Doug Estes and Jim Bennett died of gunshot wounds in the Fulton State Game area in Michigan where they were hunting deer. The victims, found near each other, were both shot in the back through their hunting licenses at close range in the late afternoon. Titus's farm abuts the section of the game area in which the victims were found. Titus alleged he had been hunting with a friend on a property a significant distance from his farm on the day the shootings occurred, and returned home after the victims were discovered.

Titus was not charged with the crimes until 2001. No eyewitnesses were found. At trial, a number of witnesses testified on behalf of the prosecution with respect to incriminating statements made by Titus regarding his anger with, and threats of violence against, trespassers on his property. Many witnesses testified to actions taken by Titus against trespassers, including his armed confrontation of people he believed to be trespassers. Two witnesses testified that they had seen a man dressed in camouflage with his car in a ditch near the location of the victims around the time of the shootings. One of these witnesses identified this man as Charles Lamp, the same man who allegedly had confessed to the killings but, when confronted by investigators, denied having made this confession. Several witnesses testified to the victims' alleged involvement in the drug trade. Additional witnesses testified to Titus's whereabouts and behavior on the day of the shootings and immediately after, including his alleged discovery of Estes's gun after the shootings and subsequent delivery of it to the police free of fingerprints. Titus moved for a directed verdict, arguing there was insufficient evidence to prove a "premeditated and deliberate motive to kill." The trial court denied this motion.

After deliberating for two and a half days, the jury found Titus guilty of two counts of

first degree murder. Titus timely appealed his convictions and sentences to the Michigan Court

of Appeals. He also filed a motion to remand, requesting an evidentiary hearing on a claim of

ineffective assistance of counsel. The Michigan Court of Appeals denied Titus's motion to

remand, affirmed his convictions and sentences, and denied his subsequent motion for rehearing.

Titus filed an application for leave to appeal to the Michigan Supreme Court on the same issues.

The Michigan Supreme Court denied the application.

Titus timely filed a petition for a writ of habeas corpus in the district court, raising the

identical claims to those he had raised in state court: (1) the trial court violated his due process

rights by denying his motion for a directed verdict because the prosecution failed to prove the

essential element of premeditation; and (2) the district court should grant an evidentiary hearing

on whether his trial counsel was ineffective. The district court denied his habeas petition. Titus

appeals only the district court's denial of his claim that the state court decision violated his due

process rights because the prosecution failed to prove premeditation.

When considering a petition for a writ of habeas corpus under the Antiterrorism and

Effective Death Penalty Act of 1996, this Court may not grant the writ unless it finds that the

state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly

established Federal law," or (2) "based on an unreasonable determination of the facts in light of

the evidence presented." 28 U.S.C. § 2254(d); *see also Ruelas v. Wolfenbarger*, 580 F.3d 403,

408 (6th Cir. 2009). In evaluating the reasonableness of a finding that sufficient evidence was

presented at a criminal trial, "the relevant question is whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). "Circumstantial evidence is sufficient to sustain a conviction and the evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Clark*, 634 F.3d 874, 876 (6th Cir. 2011) (citing *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010)).

The Michigan Penal Code defines first degree murder as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." Mich. Comp. Laws 750.316(1)(a). Titus argues that the state court's decision regarding the sufficiency of the premeditation evidence presented at trial was an unreasonable application of the federal evidentiary standard required by *Jackson*. This Court evaluates whether sufficient evidence was presented at trial for a rational juror to find premeditation beyond a reasonable doubt. *See Clark*, 634 F.3d at 876 (citing *United States v. Holden*, 557 F.3d 698, 707 (6th Cir. 2009)). We find that the state court's decision with regard to premeditation was not an unreasonable application of federal law.

Under Michigan law, "[t]o premeditate is to think about beforehand." *People v. Plummer*, 581 N.W.2d 753, 757 (Mich. Ct. App. 1998) (quoting *People v. Morrin*, 187 N.W.2d 434, 449 (Mich. Ct. App. 1971)) (internal quotation marks omitted). The term premeditation characterizes "a thought process undisturbed by hot blood" and requires an "interval between initial thought and ultimate action . . . long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *Id.* (quoting *Morrin*, 187 N.W.2d at 449). "Premeditation may be established through evidence of the following factors: (1) the prior

relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)).

The prosecution presented premeditation evidence at trial, including evidence of Titus's actions before the shootings, the circumstances of the shootings, and his conduct afterward. To establish its claim that Titus thought about the act beforehand, the prosecution presented evidence of Titus's past confrontations with trespassers. This evidence included testimony by a neighbor, Bonnie Huffman, that Titus had approached her on a previous occasion while holding a handgun and told her to get off of his property. Chris Whitby, a deer hunter, testified that he had once tracked an injured deer onto Titus's property and Titus, with a gun in his hands, approached Whitby and told him that he must leave and that if he caught Whitby on his property again he would call the police. Numerous witnesses testified that Titus had spoken previously about his anger with trespassers on his property and his general willingness to shoot them. The prosecution also presented evidence of Titus's conduct after the shootings, including: testimony that Titus responded "probably" when Donna Hutchins told Titus that she believed he had committed the murders; witness testimony that Titus said the victims "deserved it" because they were trespassers; and evidence that Titus found Estes's gun in the woods after the shootings, told others he took the gun home and cleaned it, and delivered it to the police with no discernible fingerprints on it. Additionally, the prosecution presented evidence of the nature of the

shootings—single shots, in the victims' backs, and through their hunting licenses—to further establish that the killings were committed in a deliberate, thought-out manner.

Viewing the evidence in the light most favorable to the prosecution, we find that a rational juror could have found the element of premeditation beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. A rational trier of fact could find beyond a reasonable doubt that, in addition to other evidence presented at trial, Titus's many statements of intended violence against trespassers, his aggressive confrontations with people he believed to be trespassing on his land, his specific assertion that he would retaliate against trespassers by shooting them, and the precise nature of the gunshot wounds indicated forethought, motive, and enough time for a "second look" sufficient to establish premeditation. While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation "beyond a reasonable doubt" does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution. *See Clark*, 634 F.3d at 876; *see also Harrington v. Richter*, 131 S. Ct. 770 (2011). "Even a strong case for relief does not make the state court's contrary conclusion unreasonable." *Harrington*, 131 S. Ct. at 778.

Because the evidence at trial was sufficient for a rational juror to find the element of premeditation beyond a reasonable doubt, the decision of the state court was not an unreasonable application of, nor contrary to, federal law on this issue. Therefore, we agree with the district court's decision and we **AFFIRM** its order denying Titus's petition for a writ of habeas corpus.