# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 27, 2017

Plaintiff-Appellee,

v

No. 331425
Wayne Circuit Court
LC No. 15-005903-01-FC

REGINALD RAY COLEMAN,

Defendant-Appellant.

Before: SAWYER, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals of right following his jury-trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced as a third habitual offender, MCL 769.11, to life imprisonment without parole for his murder conviction, three to 10 years' imprisonment for his felon-in-possession conviction, and five years' imprisonment for his felony-firearm, second offense conviction. We affirm.

This case stems from the shooting death of Rodney Hurling in the early morning of May 15, 2015, as he sat in his car in front of his house. The prosecution asserted at trial that defendant shot Hurling because Hurling had sold fake pills to a purchaser the day before in a deal set up by defendant.

Defendant first argues that the trial court erred by admitting autopsy photographs of the victim because the prejudicial effect of the photographs unfairly outweighed their probative value. We disagree. "A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). An abuse of discretion occurs when the trial court selects an outcome that does not fall within the range of reasonable and principled outcomes. *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

The admission of the autopsy photographs of the victim's face and head was not unfairly prejudicial or needlessly cumulative under MRE 403, and thus the trial court did not abuse its discretion. Defendant argues that the trial court erred when it admitted close-up photographs of the victim at his autopsy, over the objection of defense counsel because the gruesomeness of the

photographs rendered them unfairly prejudicial and because they were needlessly cumulative since multiple witnesses testified regarding the gunshot wounds inflicted upon the victim. Under MRE 402 "[a]ll relevant evidence is admissible." Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury. Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011) (quotation marks and citation omitted).

Generally, photographic evidence is admissible if it is relevant and not unduly prejudicial. *Gayheart*, 285 Mich App at 227. As this Court has held, when "photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *People v Mills*, 450 Mich 61, 77; 537 NW2d 909 (1995), modified 450 Mich 1212; 539 NW2d 504 (1995) (quotation marks and citation omitted).

Several witnesses testified about finding the victim after he was shot and about his wounds. However, photographs may be admitted to corroborate witnesses' testimony and are not excludable merely because they are cumulative of witness testimony. *Id*. at 76. A jury is entitled to view the extent and severity of a victim's injuries itself and is not required to rely solely upon the testimony of experts. *Id*. at 72-73. The photographs were particularly relevant because they depicted the nature and extent of the victim's wounds and were probative both of an intent to kill and premeditation. MRE 401; *Id*. at 66-68.

Defendant argues that the photographs were not necessary to show premeditation or cause of death because he is not disputing those issues, only that he was the shooter. This Court has earlier rejected this same argument, holding that "the prosecution is required to prove each element of a charged offense regardless of whether the defendant specifically disputes or offers to stipulate any of the elements." *People v Mesik* (*On Reconsideration*), 285 Mich App 535, 544; 775 NW2d 857 (2009). Thus, the prosecution was still required to prove premeditation even if defendant did not dispute that element at trial. The 13 gunshot wounds to the victim were probative of premeditation. The photographs of the victim's wounds provided additional evidence of defendant's premeditation and intent.

Defendant next argues that insufficient evidence was submitted at trial on the issue of identity to support the jury's guilty verdicts beyond a reasonable doubt on the charges of first-degree premeditated murder, felon-in-possession, and felony-firearm and constituted a denial of his right to due process. When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). This Court views the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

Defendant's insufficiency of the evidence argument fails. The prosecution's theory at trial was always that defendant, with premeditation and deliberation, shot the victim to death. However, in response to defendant's closing argument in which he implied that the jury could acquit defendant if they found that he merely drove the person who shot the victim to and from the scene of the murder, the trial court, at the prosecution's request, instructed the jury that defendant could be guilty of aiding and abetting first-degree murder. Sufficient circumstantial evidence was presented to support both theories.

"In order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* Evidence of injury is admissible to show intent to kill. *Mills*, 450 Mich at 71. To be convicted under an aiding and abetting theory, the prosecution must prove:(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the aid and encouragement was given. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006).

In this case, evidence was presented regarding premeditation. The trial testimony set forth the prior relationship between defendant and the victim and their interactions before the murder. Testimony established that on May 13, 2015, the victim and his brother sold pills to a buyer for $1,500 in a deal put together by defendant. Approximately one hour after the sale occurred, defendant made a threatening phone call to the victim's brother demanding a refund because the pills they sold were fake. On May 14, 2015, at about 11:30 p.m., the victim received a call from defendant's cell phone and the victim was overheard telling the caller his home address. Before the shooting, a neighbor was outside on her porch and saw a royal blue Charger or Challenger pull up and a young, tall, skinny black man got out of the passenger side of the car and got into the passenger side of the victim's parked car, which had a person sitting in the driver's side. The neighbor went inside and immediately heard multiple gunshots.

Evidence regarding the circumstances of the victim's death was also presented. The victim was found dead in the driver's side of his car with 13 gunshot wounds on his right side. The manner of death was homicide. Further testimony established that cellular phone service on the phone defendant was using was terminated at 12:24 a.m. on May 15, 2015. Further, defendant left town after the homicide and was apprehended 13 days later in Cleveland, Tennessee. Moreover, trial testimony established that both defendant and his half-sister Shanette Garrett drove a blue Charger believed to be registered to Garrett. And defendant and Garrett's cellular phone records established that both phones were in the area of the victim's home at the time of the murder.

Finally, two inmates, West and Bruno,[1] who were incarcerated with defendant when he was awaiting trial on the charges at issue, testified that defendant bragged to them that he shot and killed the victim because the victim had cheated him in a drug deal. West and Bruno admitted that they received lesser sentences as a result of their testimony against defendant, but they also stated that their testimony was truthful and their testimony was corroborated by other evidence. Both inmates testified that defendant told them that he had used his father's cell phone on the night of the murder, and defendant's father testified that defendant had used his cell phone in May 2015. West testified that defendant said that his sister had driven him to the victim's house in a blue Charger, and cellular phone records established that both defendant's and Garrett's phones were in the area of the victim's home at the time of the murder. Further, West testified that defendant told him that the Charger had a piece of tape on its bumper and when the police impounded the blue Charger registered to Garrett the vehicle had tape on the left bumper.

Taken altogether, there was more than sufficient evidence to establish that defendant murdered the victim using a gun and that he acted with premeditation and deliberation. Further, defense counsel stipulated that defendant had a prior felony conviction and that, on the date of the murder, he had not regained his privilege to carry a firearm. Because sufficient evidence to support defendant's conviction for first-degree premeditated murder was presented, there was also sufficient evidence to support defendant's convictions for felon-in-possession and felony-firearm.

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michael J. Riordan

---

[1] Defendant argues that West and Bruno were not credible. However, witness credibility is an issue for the trier of fact to determine, not the appellate court. *People v Velasquez*, 189 Mich App 14, 16; 472 NW2d 289 (1991).