*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HAROLD JAMES MORGAN,

Defendant-Appellant.

UNPUBLISHED
February 27, 2020

No. 345603
Montmorency Circuit Court
LC No. 18-004286-FC

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right from his jury-trial conviction of first-degree premeditated murder, MCL 750.316, for which the trial court sentenced defendant to serve life in prison without the possibility of parole. We affirm.

## I. BACKGROUND

Defendant admits that he killed the victim. The victim is defendant's grandniece and defendant was friendly with the victim's live-in boyfriend, Justin Slieff. Slieff testified that he would provide defendant with marijuana and that defendant would often borrow money from him. According to Slieff, defendant's frequent visits to the couple's home became an issue approximately two months before the homicide when the victim complained that defendant was visiting too often. Slieff stated that, although defendant stayed away from the home for a while, in the two weeks before the killing, defendant would frequently show up at the home unannounced when no one was home. Slieff stated that defendant's behavior caused the victim to become upset with defendant on several occasions and that the couple informed defendant that he could only visit if he asked their permission beforehand.

Then, on the evening of August 23, 2017, Slieff found the victim unresponsive in their home as a result of a ligature strangulation and two stab wounds to the chest. Ligature abrasions on the victim's neck were consistent with being caused by a shoelace and a broken shoe lace was found in the home, as was a shoe with a missing shoelace. Slieff testified that the shoe belonged to the victim, but that she never wore it. According to Slieff, the shoe was in a different place than

the last time he saw it. The victim's dog was locked in a crate or kennel upstairs, despite neither the victim nor Slieff ever doing so.

Before trial, the Center of Forensic Psychology evaluated defendant regarding his competency to stand trial and criminal responsibility. The evaluators concluded that defendant was competent to stand trial and that he was not legally insane when he committed the alleged crime. On June 12, 2018, the trial court entered an order denying defense counsel's request for a second competency evaluation. On July 27, 2018, three days before trial, defense counsel filed a notice of intent to introduce the insanity defense and an emergency motion requesting an independent criminal-responsibility evaluation. The trial court, again, denied defendant's request.

Defendant was charged with open murder. At trial, defendant testified that, on the day in question, while neither the victim nor Slieff were in their home, he entered the home and put the victim's dog in a kennel upstairs. Defendant testified that, when the victim returned home, she yelled at him and he "snapped." According to defendant, he strangled the victim in a "rage" and then stabbed her twice with a knife. Defendant did not know how long he strangled the victim or where he obtained the knife he used to stab her. Defendant also testified that he has a history of mental illness. Defense counsel argued that defendant was guilty of only voluntary manslaughter, but the jury found defendant guilty of first-degree murder. This appeal followed the trial court's imposition of a life sentence without parole.

## II. ANALYSIS

### A. CRIMINAL RESPONSIBILITY

Defendant first argues that the trial court violated his Sixth Amendment due-process right to present a defense by denying his request for the appointment of an expert to conduct an independent criminal-responsibility evaluation. "We review de novo, as an issue of constitutional law implicating a defendant's due-process rights, the trial court's grant or denial of a defendant's request for state funds to retain an expert." *People v Propp*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343255), slip op at 3. In doing so, we "must consider whether, in light of defendant's explanation as to why the requested expert was necessary for his defense, the trial court should have determined that state funds were required to afford defendant a fair opportunity to confront the prosecution's evidence and present his defense." *Id.* at ___; slip op at 3.

A defendant requesting a state-funded expert "must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *People v Kennedy*, 502 Mich 206, 228; 917 NW2d 355 (2018), quoting *Moore v Kemp*, 809 F2d 702, 712 (CA 11, 1987). A defendant requesting an expert to present an insanity defense must "demonstrate a substantial basis for the defense." *Moore*, 809 F2d at 712. The defendant's showing must "include a specific description of the expert or experts desired" and "should inform the court why the particular expert is necessary." *Id.* A defendant's "bare assertion that an expert would be beneficial cannot, without more, entitle him or her to an expert." *Kennedy*, 502 Mich at 226.

In this case, defendant has not identified any proposed expert who would have concluded that defendant was legally insane or otherwise assisted his case; defendant similarly has not offered

any authority which would contradict the Center for Forensic Psychology's findings. Additionally, before the trial court, defendant failed to explain why an independent mental evaluation was necessary to his defense, particularly in light of the Center for Forensic Psychology's conclusion that defendant was not legally insane at the time of the murder. Moreover, defendant failed to timely file written notice of his intent to pursue an insanity defense under MCL 768.20a. Therefore, the trial court was required to exclude any "evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant." MCL 768.21(1). Thus, because defendant failed to show that he was entitled to present an insanity defense and that a proposed expert would be beneficial to the presentation of such a defense, the trial court properly denied defendant's request for a state-funded expert.

## B. ASSISTANCE OF COUNSEL

Next, defendant argues that he was unconstitutionally deprived of the effective assistance of counsel by his trial counsel's failure to file timely notice of an insanity defense, failure to submit a timely request for the appointment of an independent examiner, and concession of guilt to second-degree murder without obtaining consent. A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). Where, as here, a defendant fails to request a *Ginther*[1] hearing or move for a new trial in the matter, our "review of this issue is limited to mistakes apparent on the appellate record." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "If the record does not contain sufficient detail to support defendant's ineffective-assistance claim, then he has effectively waived the issue." *Id.*

Regarding defendant's sanity, his arguments on appeal focus on defense counsel's second and third motions for an examination and defense counsel's late motion to present an insanity defense. What defendant overlooks, however, is that at the bind over stage, defense counsel *did* successfully move the district court for a referral to determine defendant's competency to stand trial and criminal responsibility. The results of this evaluation—returned merely five months before defense counsel's second motion—indicated that defendant was competent to stand trial and was not criminally insane at the time of the offense. On the basis of these results, defense counsel did not pursue an insanity defense. Defense counsel's subsequent late decision to pursue an independent expert and an insanity defense was predicated on a recent letter defendant sent to a local newspaper admitting the murder and claiming schizophrenia. In the letter, defendant stated that manslaughter was his "goal."

While defendant faults trial counsel for the "late" motions, the record makes clear that trial counsel moved diligently after defendant's letter raised concerns that defendant was mentally ill. On appeal, defendant has not provided this Court with any evidence which would detract from the initial evaluation or support his theory of insanity. Specifically, defendant has not identified any expert which would give a contrary opinion to the Center for Forensic Psychology or any other

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

-3-

contradictory authority. Defendant argues that his failure to provide evidentiary support for his insanity claim—and therefore failure to prove the prejudice prong of his ineffective-assistance claim—is a result of this Court's denial of his motion to remand this case for an independent evaluation of defendant's criminal responsibility. This argument, however, is circular. Defendant is simply not entitled to a remand without providing at least some reasonable evidence showing the need for a second evaluation. To grant defendant a remand for a second evaluation, without his first proving a reasonable probability that the evaluation would assist his defense, would allow defendant to meet his burden with the very relief sought. In other words, defendant is asking us to award him relief simply for making a motion. This we cannot do. Therefore, because defendant has not provided any evidence which would undermine his initial evaluation, we are unable to conclude that defense counsel was ineffective for failing to seek a second evaluation earlier or that any alleged ineffectiveness prejudiced defendant. See *People v Emerson (After Remand)*, 203 Mich App 345, 348-349; 512 NW2d 3 (1994).

Defendant also argues that he was denied the effective assistance of counsel because trial counsel conceded in his closing argument that there was sufficient evidence to convict defendant of second-degree murder. We disagree. Defendant is correct that a counsel may not concede a defendant's guilt without his consent. See *McCoy v Louisiana*, 584 US ___. ___; 138 S Ct 1500, 1505; 200 L Ed 821 (2018). Yet, in this case, defendant admitted to killing the victim. In his closing argument, trial counsel reiterated that defendant was not contesting this element of the crime. Trial counsel, however, did not argue that defendant was guilty of second-degree murder. Rather, trial counsel acknowledged that defendant had an intent to kill the victim, an element of second-degree murder, but argued that this intent was negated by defendant's reasonable emotional excitement at the time of the offense,[2] such that defendant was guilty of manslaughter, but not second-degree murder. This argument is consistent with defendant's "goal" of a manslaughter conviction and therefore provides no basis for concluding that trial counsel was unconstitutionally ineffective.

## C. PREMEDITATION

Finally, defendant argues that the trial court erred by denying his motion for a directed verdict of acquittal of first-degree murder because there was insufficient evidence of premeditation and deliberation. We review de novo a trial court's decision on a motion for a directed verdict. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). In doing so, we review the evidence "in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted).

As relevant to this case, to find a defendant guilty of first-degree murder, the prosecution must prove beyond a reasonable doubt "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627

---

[2] See *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003) ("[T]he element distinguishing murder from manslaughter—malice—is negated by the presence of provocation and heat of passion.").

-4-

(2010); MCL 750.316(1)(a). "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (internal citation and quotation marks omitted). Relevant to the question of whether a defendant acted with premeditation and deliberation are the following factors: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

Viewing the record evidence in a light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that defendant's killing was premeditated and deliberate. For months before the killing, defendant was involved in disagreements with the victim. The record shows that defendant entered the victim's empty home and put her dog in a kennel. Ligature marks on the victim's neck show that she was strangled with a shoelace and a shoe found in the home was missing a shoelace. Slieff testified that the victim had not worn the shoe and that the shoe had been moved since he last saw it. Given that no witness explained how the shoe lost its shoelace, the jury could reasonably infer that defendant removed the shoelace in preparation of his attack on the victim. Moreover, defendant stabbed the victim twice with a knife near the end of the attack, but could not explain where he procured the knife. Again, a reasonable inference from this testimony is that defendant brought the knife to the victim's home in preparation of the attack or found the knife in the home before the attack. In sum, a rational jury could reasonably infer from the evidence presented that defendant planned a surprise, fatal attack on the victim as retaliation for her disagreements with him over the preceding months. Accordingly, the record is sufficient to support a finding of premeditation and deliberation. Therefore, defendant was not entitled to a directed verdict on the charge of first-degree murder.

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan