*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MITCHELL S. MERGEL,

        Defendant-Appellant.

UNPUBLISHED
August 17, 2023

No. 364962
Oakland Circuit Court
LC No. 2021-277875-FH

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying his motion to suppress various evidence in this case. On appeal, defendant contends that the challenged evidence should have been suppressed because investigating police officers violated his *Miranda*[2] rights during his arrest, booking, and police station interview. For the reasons stated in this opinion we reverse and remand for further proceedings.

## I. BACKGROUND

This case arises from an alleged incident of domestic violence in February 2021 between defendant and his then-girlfriend. After interviewing the girlfriend at her home, officers went to defendant's home, arriving around 2:40 a.m., and employed various efforts to get defendant to come outside and speak with them. This included shining lights inside defendant's home, loudly knocking on defendant's front and back doors, announcing the police presence outside, and ordering defendant to come outside. After about 20 minutes, defendant came outside, officers questioned him for about 5 minutes on the porch, and then arrested him. At the police station, officers questioned defendant further during the booking process and at a later police station interview. An officer also administered defendant a Breathalyzer test during booking. An officer

---

[1] See *People v Mergel*, unpublished order of the Court of Appeals, entered April 12, 2023 (Docket No. 364962).

[2] See *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

read defendant a *Miranda* warning at his police station interview, well after the initial arrest and booking.

Defendant was charged with one count of assault with intent to do great bodily harm less than murder and/or by strangulation or suffocation, MCL 750.84. Defendant moved to suppress all his statements to police after he exited his home, including those from the police station interrogation, arguing that police obtained this evidence in violation of *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Defendant claimed that police effectively placed him in custody when they "forced" him from his home in the middle of the night, during winter, and then questioned him on the porch to obtain incriminating information without ever providing *Miranda* warnings. Further, defendant asserted that his later statements while interrogated at the police station were tainted by the initial *Miranda* violation at defendant's home and a "rushed" reading of defendant's *Miranda* rights at the police station, thus rendering these statements involuntary.

Following an evidentiary hearing, defendant filed a supplemental memorandum in support of his motion to suppress. Defendant maintained that he was in custody and thus improperly questioned without *Miranda* warnings on the porch. Next, defendant argued that officers again violated his *Miranda* rights during the booking process by asking nontypical questions concerning his intoxication and defensive wounds, especially with defendant in custody at the time and following the earlier *Miranda* violation at defendant's house. Relatedly, defendant asserted that his Breathalyzer test taken during booking constituted an illegal search because officers "forced" him to take the test without a warrant, while in custody, and following the earlier *Miranda* violation at defendant's house. According to defendant, this search violated *Miranda* and/or the Fourth Amendment to the United States Constitution. Lastly, defendant reiterated, with some elaboration, that his statements when being interrogated at the police station were tainted by the initial *Miranda* violations at defendant's home and during booking, and an inadequate waiver of defendant's *Miranda* rights at the police station. Defendant, therefore, requested that the trial court suppress (1) all his prearrest statements to police on the porch, (2) all his statements during booking related to intoxication or defensive wounds, (3) the Breathalyzer test results and any mention thereof, and (4) all his statements during the entirety of his police station interview.

The trial court denied defendant's motion to suppress. Regarding the questioning of defendant on his porch, the court reasoned as follows:

> Current caselaw does not support [defendant]'s assertion that he was in custody at the time he provided his pre-arrest statements to the police. The interview occurred on the porch of his home; the interview occurred in public; [defendant] freely and willfully stepped onto his porch to speak with officers (albeit following a direction from an officer); no officers used restraints on [defendant] or even made unconsented physical contact with him; only one officer ever unholstered his weapon, never pointed it or displayed it to [defendant], and holstered it as soon as officers were safe; the questions lasted only a total of five minutes. He was not told he could not leave; he was not told he was under arrest; he was not in handcuffs.

As for Defendant's arguments that the officers, knowing they were going to arrest him, "conspired and collaborated together to figure out a way to get him to come out of his house, so that they could ask him incriminating questions without advising him of *Miranda*", the court, on this record, cannot find that this occurred. The "in custody" requirement is not satisfied merely because the police interviewed a person who was the "focus" of a criminal investigation.

For these reasons, the court finds that Defendant's right against self-incrimination as established by *Miranda* was not violated in the period of time before his arrest.

The trial court also rejected defendant's argument regarding the challenged evidence solicited during booking. The court agreed with the prosecution that the booking process here and officers' actions at the time properly related to the department's administrative procedures and constitutional obligations while a person is in custody, particularly in light of defendant's earlier statements regarding his intoxication and injuries. Finally, the trial court rejected defendant's argument that his statements during his police station interview must be suppressed, reasoning that defendant's argument on this point necessarily failed because officers did not violate *Miranda* during the prearrest questioning or defendant's booking.

Defendant moved for reconsideration, which the trial court denied. The trial court ultimately stayed these proceedings pending this Court's decision on defendant's application for leave to appeal in this Court. As stated, this Court granted defendant's delayed application for leave to appeal.

## II. STANDARD OF REVIEW

"This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019) (citation omitted). "A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. (citation omitted). "The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion." *Id*. (quotation marks and citation omitted). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes." *Id*. (citation omitted). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts," this Court's review is de novo. *Id*. (quotation marks and citation omitted). "When the record contains a video recording of the events in question, however, this Court need not rely on the trial court's conclusions as to what the video contains." *People v Campbell*, 329 Mich App 185, 193; 942 NW2d 51 (2019) (quotation marks and citation omitted).

## III. ANALYSIS

Defendant argues that the trial court erred by failing to suppress (1) his statements during the police questioning on his porch, (2) his statements at booking responding to officers' incriminatory questions, (3) his Breathalyzer test from booking, and (4) all his statements to Detective Keith Bierenga at the police station interview. Because we conclude that the video

evidence of the police officers' questioning of defendant on his porch indicates that the officers did not treat defendant as free to go but conducted a custodial investigation without providing defendant a *Miranda* warning, the trial court erred by not granting defendant's motion to suppress the porch interview evidence.

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V. "To protect this right, police officers must advise a defendant of certain rights before a custodial interrogation." *Campbell*, 329 Mich App at 202, citing *Miranda*, 384 US at 444. "*Miranda* warnings are required when a person is in custody or otherwise deprived of freedom of action in any significant manner." *Id*. (quotation marks and citation omitted). "Whether a defendant is in custody for purposes of *Miranda* at the time of an interrogation is determined by looking at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that he or she was free to leave." *Id*. "The determination of custody depends on the objective circumstances of the interrogation rather than the subjective views harbored by either the interrogating officers or the person being questioned." *People v Cortez*, 299 Mich App 679, 691-692; 832 NW2d 1 (2013) (quotation marks and citation omitted). "If the custodial interrogation is not preceded by an adequate warning, statements made during the custodial interrogation may not be introduced into evidence at the accused's criminal trial." *Campbell*, 329 Mich App at 202 (quotation marks and citation omitted).

To determine custody, there are a number of factors courts should consider, including: "(1) the location of the questioning; (2) the duration of the questioning; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning." *People v Barritt*, 325 Mich App 556, 562-563; 926 NW2d 811 (2018) (citations omitted). "[N]o one circumstance is controlling; rather, a reviewing Court must consider the totality of the circumstances when deciding whether an individual was subjected to custodial interrogation under *Miranda*." *Id*. at 563 (citation omitted). Further, for the purposes of *Miranda*, "interrogation refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *People v Anderson*, 209 Mich App 527, 532-533; 531 NW2d 780 (1995) (citation omitted); see also *People v White*, 493 Mich 187, 195-196; 828 NW2d 329 (2013).

Defendant argues that, while the custody analysis "does not start with the officers' subjective intentions, it is important to understand" that officers intended to arrest defendant no matter what occurred during their investigation and "collaborated together" to find a way to question him outside without the benefit of *Miranda*. Moreover, according to defendant and given the totality of the officers' actions, he was objectively not free to leave during the porch questioning. Defendant asserts that he was in custody when questioned on the porch and because he was never provided any *Miranda* warnings at the time, all his prearrest statements should be suppressed. We agree.

Officers' statements to one another before and their subjective intent during questioning are irrelevant in determining custody for the purposes of *Miranda*. See *Cortez*, 299 Mich App at 691-692; see also *Stansbury v California*, 511 US 318, 323-324; 114 S Ct 1526; 128 L Ed 2d 293 (1994) ("[a] policeman's unarticulated plan has no bearing on the question whether a suspect

was 'in custody' at a particular time; rather, the only relevant inquiry is how a reasonable man in the suspect's position would have understood the situation.") (alteration in original; quotation marks and citation omitted).  Here, officers never conveyed to defendant any intention to arrest him until actually doing so after their questioning.  The officers' intention to arrest defendant is not dispositive.

Objective analysis of the totality of the circumstances and consideration of the factors articulated in *Barritt*, we conclude that defendant was not free to leave during the officers' questioning.  The video evidence of the officers' intervention at defendant's home indicates that the police restrained defendant's movement.  The officers' bodycam videos establish that, around 2:30 a.m., the police went onto defendant's property, posted officers at the doors, directed their flashlights into the home, pounded on the front door repeatedly, and verbally directed defendant to come to the door because "we have to chat with ya."  Officers directed the spotlights from their police vehicles at the area of defendant's house illuminating the front porch and activated one of the vehicle's flashing lights.  Police continued to bang on defendant's front door identifying themselves as the police department.  One officer shouted, "Police department, hey you have to come talk with us."  The bodycam video of the officer at the house's rear sliding glass doors indicates that defendant appeared at that door and looked outside, whereupon the officer ordered him to go to the front door.  Following this, defendant went to his front door, and an officer told him to come out.  Defendant stepped out onto his porch—which had snow on it—in shorts, a long-sleeved shirt, and in bare feet.  An officer stood to the rear of defendant on the porch near defendant's front door.  An officer asked defendant about the night's events to which defendant began to provide an explanation.  That officer asked if he could frisk defendant.  Defendant consented.

A discussion between defendant and an officer about whether he had shoes or boots inside the house took place.  Defendant said he did.  An officer standing near defendant's front door went into defendant's house with defendant's permission to retrieve some boots.  The other officer continued asking defendant to explain what happened.  After defendant put on his boots, the officer asking defendant questions directed defendant to show him his hands and proceeded to inspect them.  The officer standing near the door remarked that the reason they asked was because defendant's girlfriend had been "beaten up pretty bad."  That officer asked defendant several questions including whether defendant put his hands on his girlfriend's neck at any time and asked for details about what happened.  Defendant offered an explanation.  The officer to defendant's rear asked how she got a black eye.  Defendant denied touching his girlfriend.  Four officers were present, two on the porch—one at the door and one facing defendant—and two stood at the base of the porch steps.  The police placed defendant under arrest and placed handcuffs on him.  Defendant was not permitted to get his wallet, and an officer entered the house and retrieved defendant's phone and wallet, checked and locked the doors.

At all times, defendant appeared agreeable and cooperative.  The officers were polite but direct in their interactions with defendant.  The police questioned defendant for over five minutes on the porch.  Defendant told the officers his version of the events of the evening and repeated aspects of it because of the officers' questioning.  Some of defendant's statements in response to the police questioning could be considered incriminating.  No officer physically restrained defendant during the questioning.  The record, however, reflects that one officer closed defendant's front door after he exited his house and that officer stood in proximity to the door in a posture that

suggested that defendant was not free to cut off the questioning and return inside. The evidence does not indicate that defendant was free to return indoors at any point during his interaction with the police on his front porch. Under these circumstances, a reasonable person would not have felt free to terminate the officers' questioning and return inside. The totality of the circumstances indicates that the police subjected defendant to custodial interrogation on his front porch without providing him a *Miranda* warning. Therefore, the trial court erred by denying defendant's motion to suppress the evidence related to the front porch police custodial interrogation. Accordingly, we reverse the trial court's ruling.

We decline to consider defendant's other arguments regarding the trial court's denial of his motion to suppress the evidence obtained by police during his booking and later police interview at the police station. We remand to the trial court to reconsider its rulings regarding those claims of error so that the court can consider the issues in light of our judgment that the court erred in not suppressing the porch interrogation.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick