# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN LEONARD NEUMAN,

        Defendant-Appellant.

UNPUBLISHED
July 25, 2017

No.  331400
Macomb Circuit Court
LC No.  2015-000899-FC

---

Before:  GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premediated murder, MCL 750.316, and assault with intent to murder (AWIM), MCL 750.83.  The trial court sentenced defendant to life in prison without the possibility of parole for first-degree murder and 420 to 660 months in prison for AWIM, with 369 days' jail credit.  We affirm defendant's first-degree murder conviction, vacate his AWIM conviction, and remand to the trial court for further proceedings.

Defendant stabbed and killed Reginald Brown and stabbed and wounded Miguel Castaneda during a street fight that occurred in the city of Warren around 2:00 a.m. on January 10, 2015.  Earlier in the evening, defendant attempted to call his former girlfriend, Ceciley Rodriguez.  Rodriguez had gone out to a bar with Castaneda, Brown, and Castaneda's sister, who was also Brown's fiancé, to celebrate Brown's birthday.  While Rodriguez and defendant were no longer dating, they had continued to be intimate on several occasions, including as recently as the New Year's Eve prior to the stabbing.  Defendant's attempts to contact Rodriguez were apparently in response to a call that she made to him.  Rodriguez did not remember making the call, but the prosecution did not dispute that cell phone records showed that the call had been made.  Defendant then proceeded to call Rodriguez over thirty times and, on the occasions that she answered, made comments that greatly upset her.  Eventually, Casteneda answered Rodriguez's phone and told defendant to stop calling her.  Defendant and Castaneda exchanged insults and agreed to meet for a fight.  Defendant testified that during the phone call he did not know who he was speaking to.  When Castaneda, Brown, Rodriguez, and Castaneda's sister arrived at the meeting place, defendant was already there waiting.  Defendant testified that he had walked two blocks to get to there and that he had waited for 20 to 30 seconds before Castaneda and the others arrived.

-1-

There was conflicting testimony regarding the fight itself. Defendant and Castaneda were the only two witnesses to observe what occurred and their accounts were markedly different. Casteneda testified that when he and Brown arrived and got out of the car, defendant ran up to Brown and immediately attacked him with the knife. Casteneda saw defendant repeatedly stabbing Brown and attempted to disengage defendant by placing him in a choke hold. Defendant then stabbed Casteneda and ran off yelling a racial slur. A neighbor also testified to hearing an altercation and seeing an individual whom she was not able to identify run off while yelling a racial slur. Castaneda and defendant are both white, and Brown was black. Brown had 19 stab wounds, 4 of which were described as fatal by the medical examiner. Casteneda suffered a punctured lung and was hospitalized for over a week.

Defendant testified that the fight began as a mutual fist-fight between him and Casteneda. According to defendant, he and Castaneda were fighting but neither had inflicted any kind of serious hit when Brown "blind-sided" him by striking him in the ear and knocking him to the ground. Defendant testified that he only drew his knife after he was "blind-sided" by Brown and claimed that he swung his knife wildly at both men in self-defense in an effort to disengage them. Defendant denied that he thought about killing anyone when he went to the fight.

Defendant argues on appeal that the trial court erred when it denied his request for a jury instruction on voluntary manslaughter as a lesser included offense of first-degree murder and denied his request to give an instruction on assault with intent to do great bodily harm less than murder (AWIGBH) as a lesser included offense of AWIM.[1]

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). "[A]n inferior-offense instruction is appropriate only if the lesser offense is necessarily included in the greater offense, meaning, all the elements of the lesser offense are included in the greater offense, and a rational view of the evidence would support such an instruction." *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003).

"Manslaughter is an inferior offense of murder because manslaughter is a necessarily included lesser offense of murder." *Mendoza*, 468 Mich at 533.

Common-law voluntary manslaughter is defined as:

"[T]he act of killing, though intentional, . . . committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation,

---

[1] Claims of instructional error are generally reviewed de novo . . . but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition. . . ." [*Id.* at 535, quoting *Maher v People*, 10 Mich 212, 219 (1862).]

"To prove voluntary manslaughter, the prosecution must prove that: (1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Tierney*, 266 Mich App 687, 714; 703 NW2d 204 (2005). "When a defendant is charged with murder, instructions for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Id.* "In order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Id.* at 715 (citations and quotations omitted).

A rational view of the evidence in this case supports an instruction on voluntary manslaughter. In denying defendant's request for a voluntary manslaughter instruction, the trial court erroneously relied on the fact that defendant had an adequate period between the heated phone calls with Castaneda and the fight during which he could have calmed down. While the trial court is correct that any insults Castaneda delivered over the telephone could not serve as the adequate provocation, defendant also testified that he did not take out his knife before he was blind-sided by Brown punching him in the ear. We conclude that a reasonable jury could have rejected defendant's testimony that he was required to swing his knife to defend himself but could have believed his testimony that Brown blind-sided him with a punch to the ear and concluded that this punch served as adequate provocation to negate the element of malice. See *People v Chamblis*, 395 Mich App 408, 422-423; 236 NW2d 473 (1975) (stating that the jury is free to accept some parts of a defendant's account and reject others); overturned in part on other grounds in *Cornell*, 466 Mich at 357. Furthermore, we have previously concluded that a trial court erred in failing to give a lesser included instruction of voluntary manslaughter when there was evidence that the defendant killed the victim after the victim had first struck the defendant with a baseball bat. *People v Mitchell*, 301 Mich App 282, 287-288; 335 NW2d 615 (2013).[2] Therefore, the trial court erred in denying defendant's request to also instruct the jury on the lesser offense of manslaughter.

---

[2] Even if a jury concluded that defendant was the initial aggressor, it could still have concluded that some escalation by Brown or Castaneda served as adequate provocation to negate malice. Although the Michigan Supreme Court has rejected "the doctrine of 'imperfect self-defense' as an independent theory that automatically mitigates criminal liability for a homicide from murder to manslaughter when a defendant acts as the initial aggressor and then claims that the victim's response necessitated the use of force," it has also recognized that "factual circumstances that have been characterized as imperfect self-defense may negate the malice element of second degree murder." *People v Reese*, 491 Mich 127, 129-130, 150-151, 160; 815 NW2d 85 (2012). The inquiry necessarily turns on whether there was evidence of adequate provocation that could remove the element of malice. *Id.* at 150-151, 160.

However, we conclude that this error does not require reversal because defendant cannot show that the error was so great as to overcome the harmless error analysis. The "harmless error analysis is applicable to instructional errors involving necessarily included lesser offenses." *Cornell*, 466 Mich at 361. In determining whether an error was harmless, we ask whether the failure to give the proper instruction "undermined reliability in the verdict." *Id*. at 364. In this case, the jury rejected the intermediate charge of second-degree murder for which it was given an instruction and instead convicted defendant of first-degree murder. When an intermediate charge is rejected by the jury and where such a rejection indicates a "lack of likelihood that the jury would have adopted the lesser requested charge," the failure to give the lesser requested charge is harmless error. *People v Beach*, 429 Mich 450, 490-491; 418 NW2d 861 (1988) superseded by statute on other grounds as recognized in *People v Anthony*, 494 Mich 669, 687 n 53; 837 NW2d 415 (2013).

The prosecution's theory throughout the case was that defendant was guilty of first-degree murder. During both his opening and closing, the prosecutor consistently emphasized to the jury the fact that defendant was lying in wait in the cold January weather and stressed Castaneda's testimony that defendant immediately ran up to Brown and began to stab him.[3] Castaneda's testimony provided strong circumstantial evidence of premeditation and deliberation. In contrast, any evidence that supported a voluntary manslaughter conviction came from defendant's testimony, which was unequivocally inconsistent with Castaneda's. While a jury could have believed portions of defendant's testimony and rejected Castaneda's account, the fact that this particular jury convicted defendant of first-degree murder, while rejecting even the intermediate charge of second-degree murder, is clear indication that it believed Castaneda's account and the reasonable inferences that could be drawn from it and that it rejected defendant's account in its entirety. Under these facts, we conclude that the jury's rejection of the intermediate charge of second-degree murder demonstrates a "lack of likelihood that [it] would have adopted the lesser requested charge" of voluntary manslaughter. *Beach*, 429 Mich at 491, and see *People v Sullivan*, 231 Mich App 510, 520; 586 NW2d 578 (1998) (stating that "where a defendant is convicted of first-degree murder, and the jury rejects other lesser included offenses, the failure to instruct on voluntary manslaughter is harmless"). Therefore, the trial court's failure to give that instruction was harmless error.

As it concerns defendant's claim that the trial court erred in failing to give an instruction on AWIGBH as a lesser included offense of AWIM, we agree with defendant that this was error, and on this issue, the error was not harmless.

"[A]ssault with intent to do great bodily harm less than murder is a necessarily included lesser offense of assault with intent to commit murder." *People v Brown*, 267 Mich App 141, 150; 703 NW2d 230 (2005). The elements of assault with intent to commit murder are: (1) an

_____

[3] Defendant acknowledged that he did not know which individual was talking to him on Rodriguez's phone at the time he agreed to fight that individual. Therefore, at the time Brown and Castaneda exited the vehicle defendant would not have known who was the one he spoke to on the phone and agreed to fight.

assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *Id*. at 147 (citations and internal quotation marks omitted). "The elements of assault with intent to do great bodily harm less than murder are: (1) [an assault], and (2) an intent to do great bodily harm less than murder." *Id*. (citations and internal quotation marks omitted). "It is readily apparent that both offenses share the common element of assault and . . . are distinguishable from each other by the intent required of the actor at the time of the assault." *Id*. at 148.

A rational view of the evidence in this case would support the lesser included offense of AWIGBH. The only difference between AWIGBH and AWIM is whether defendant had a specific intent to kill. The trial court determined that the evidence did not support an instruction on AWIGBH, because defendant stabbed Casteneda three times. This ruling does not adequately address the legal principle that a properly requested instruction on a necessarily included lesser offense must be given if a rational view of the evidence supports it. *Mendoza*, 468 Mich at 533. A rational view of the evidence would support a jury finding that defendant intended to inflict great bodily harm less than murder. Defendant's intent toward Casteneda was in dispute at trial, and it was up to the jury to infer from the facts and circumstances what his mental state was at the time of the attack. A rational juror could have found that defendant intended to do serious bodily harm by stabbing Casteneda, but that he did not have a specific intent to kill him. The trial court erred in failing to instruct the jury on the lesser included offense of AWIGBH.

Unlike the trial court's error in refusing to give the voluntary manslaughter instruction, its error in refusing to give the AWIGBH instruction was not harmless. An error is not harmless when the reliability of the verdict is undermined by evidence that clearly supports the lesser included instruction and when the instruction is not given. *Cornell*, 466 Mich at 364-365. While providing starkly different accounts of what happened that evening, both Castaneda's account and defendant's account supported the lesser included offense of AWIGBH. Defendant testified that he had no intent to kill anyone that evening. Similarly, Castaneda testified that once defendant was free of his chokehold, defendant fled the scene. Castaneda's account of defendant's attack on Brown clearly evidenced intent to murder. Castaneda stated that defendant ran up to Brown repeatedly stabbed him and did not stop until forcibly removed. However, Castaneda's account of defendant's attack on himself could be seen as simply evidencing intent to inflict great bodily harm. Castaneda testified that defendant did not begin stabbing him until he had placed defendant in a chokehold and that when released, defendant fled the scene rather than re-engage Castaneda. In light of this evidence that supports the lesser included offense of AWIGBH, it was not harmless for the trial court to fail to give an instruction on that offense. We, therefore, vacate defendant's conviction of AWIM and remand to the trial court for retrial on that charge should the prosecution wish to pursue it.

Defendant also argues that the evidence presented at trial was insufficient to support a conviction of first-degree murder.[4]

---

[4] This argument is raised by defendant in a pro se brief filed pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4. We "review[] de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution, to determine

-5-

Under MCL 750.316, first-degree murder is defined as "Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *Id*. "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id*.

Viewing the evidence in this case in the light most favorable to the prosecution, a rational jury could have concluded that, despite defendant's assertion that he intended to engage in a one-on-one fist fight, he actually formed a premeditated and deliberate plan to kill the man who answered the phone when he called Rodriquez. Threats were exchanged over the phone. Defendant then proceeded to walk two blocks to where he had agreed to fight. Under these circumstances, defendant had time and opportunity to reflect on his choices. By his own admission, defendant had a knife in his jacket pocket. Although he claimed he carried it at all times for the purpose of opening beer cans, a purpose defendant himself recognized as unusual, a rational jury could infer from the fact that he had the knife in his jacket pocket that he intended to use it in the fight.[5]

Defendant also asserts in his Standard 4 brief that Casteneda lied under oath and that the prosecutor failed to correct the record. In support of this claim, defendant points to statements Castaneda made to the police, but those statements are not part of the trial court record. Further, even if his statements to the police were inconsistent with his testimony at trial, there is nothing to suggest which version of events is the truth – Castaneda could have been lying or mistaken when talking to the police.

Likewise, defendant's assertion that the prosecutor improperly injected an element of racism into the proceedings is unfounded. The evidence that defendant yelled a racial slur as he fled the scene was relevant to establishing defendant's state of mind, a key element of the charged offenses. Brown, the victim, was black while defendant and Castaneda are both white. Therefore, the fact that defendant yelled the racial slur was relevant to proving defendant's state

whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010).

[5] Defendant cites *People v Gill*, 43 Mich App 598, 604; 204 NW2d 699 (1972), for the proposition that "[i]t is not reasonable to infer from mere possession of a weapon, without more, that it was pocketed with the premeditated intent of killing another person." However, as part of the totality of the circumstances in this case, defendant's possession of the knife supports a finding of premeditation. According to Casteneda, defendant was waiting for the victims when they arrived at the agreed upon meeting location and immediately attacked Brown with the knife. This evidence, viewed in the light most favorable to the prosecution, suggests that defendant lay in wait and intended to use the knife to attack the man he believed had answered the phone.

of mind towards Brown. Defendant also points to a remark the prosecutor made during closing argument about the case being "a black and white issue." There is nothing in the context of this remark to suggest that the prosecutor was attempting to improperly influence the jury by appealing to racially based emotions; the reference to "black and white" was clearly a metaphor about the believability of one side or the other. The prosecutor stated, "[T]he presentation of these cases is black and white. Either you buy one side completely or you buy the other." The only race based evidence in the prosecution's case was clearly relevant to establishing the elements of the crime, namely defendant's state of mind. The prosecutor did not attempt to appeal to any passion or bias on the part of the jurors.

Defendant's conviction for first-degree murder is affirmed, his conviction for AWIM is vacated, and this matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro