*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL DEJUAN GROVE,

        Defendant-Appellant.

UNPUBLISHED
April 9, 2019

No. 339118
Wayne Circuit Court
LC No. 17-000989-01-FC

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to concurrent terms of life imprisonment without parole for the murder conviction and 3 to 5 years imprisonment for the felon-in-possession conviction, to be served after the statutory two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arose from the October 1, 2016 fatal shooting of Randy Mack (Randy). The prosecution presented evidence at trial that Randy and his girlfriend, Tiffany Jones, were involved in a heated argument outside the home of Randy's brother, Ricky Mack (Ricky), shortly before the shooting. Jones knew defendant because defendant's uncle was the father of Jones's two children, and defendant's family helped care for Jones's children. During the argument, Jones sprayed mace in Randy's face and Randy threw a car part at Jones. Several witnesses observed Jones using her cellular phone during this period, and telephone records indicated that shortly before the shooting, Jones's phone communicated with a cell phone number later matched to one of defendant's phones.

Witnesses testified that Randy eventually got into Jones's car and began slowly driving down the street. Ricky's girlfriend, Rainier Smith, testified that another vehicle went "flying up" the street, passed Ricky's house, and struck Jones's vehicle as Randy began to turn a corner.

Ricky testified that after both vehicles stopped, the driver of the second vehicle got out of his car armed with a handgun, which he pointed at Jones's vehicle. Randy got out of the first vehicle and put his hands up in the air. Ricky testified that the gunman said to Randy, "I told you Ni**er," before shooting Randy several times. The gunman then returned to his car and drove away, and Jones got into her car and also drove off, going in the same direction as the gunman. Ricky and Smith placed separate calls to 911 to report that Randy had been shot. Randy later died from multiple gunshot wounds.

On April 26, 2017, five days before the scheduled trial, defendant requested an adjournment from the trial court in order to review the "voluminous cell phone records" and numerous recordings of defendant's jail calls that the prosecution had produced the day before, or in the alternative, that the trial court declare at least the cell phone records inadmissible at trial. The prosecution did not oppose the adjournment, but noted that the cellular phone records had actually been made available to defense counsel a week earlier, but that defense counsel had not picked them up until April 25. The prosecution stated that the recorded jailhouse calls, over 500 in number, had been provided to defense counsel on March 17, 2017; more than a month before trial. The trial court ruled that the recordings of the jail calls were admissible. Regarding the phone records, the trial court ultimately held that they were admissible, but ordered the prosecution to immediately inform defendant what specific records it planned to introduce at trial, as well as to immediately inform defense counsel if the prosecution believed any particular portion of the records might be exculpatory. The trial court declined to adjourn the trial, which began on May 1, 2017.

The principal issue at trial was the identity of the shooter. The prosecution's theory at trial was that Jones had contacted defendant on her cell phone during her argument with Randy, and that defendant, who lived nearby, was the person who arrived at the scene, and who confronted and shot Randy. Ricky identified defendant as the shooter in a double-blind photographic lineup and also made an in-court identification. Smith also made an in-court identification of defendant as the shooter. The prosecution introduced the telephone records to show that Jones had communicated with defendant shortly before the shooting, and introduced evidence that both of their phones were in the area at the time of the shooting. On the fourth day of trial, the prosecution sought to admit into evidence a computer disc containing telephone records for cellular phones associated with defendant and Jones. Defense counsel objected to the admission of the computer disc on the ground that he had not been able to review the contents of the disc. The prosecution asserted that the disc merely contained electronic copies of records that had already been provided to defendant. Defense counsel ultimately agreed to review the disc over a three-day break in the trial.

Defendant was convicted and sentenced as described. This appeal followed.

-2-

## II. DENIAL OF ADJOURNMENT

Defendant argues that the trial court erred by denying his requests[1] for an adjournment of trial due to the late production of various telephone records. We disagree. We review for an abuse of discretion a trial court's decision whether to grant an adjournment. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002); see also MCR 2.503(D)(1). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016).

Defendant has not shown that the trial court abused its discretion by denying his requests to adjourn the trial due to the allegedly late production of the telephone records. MCR 2.503(B)(1) provides that, "[u]nless the court allows otherwise, a request for an adjournment must be by motion or stipulation made in writing or orally in open court based on good cause." MCR 2.503(D)(1) provides that a court may, in its discretion, "grant an adjournment to promote the cause of justice." In *People v Coy*, 258 Mich App 1, 18-19; 669 NW2d 831 (2003), this Court explained:

> [T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence. . . . "Good cause" factors include "whether defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments." . . . Even with good cause and due diligence, the trial court's denial of a request for an adjournment or continuance is not grounds for reversal unless the defendant demonstrates prejudice as a result of the abuse of discretion. [Citations omitted.]

In this case, defense counsel requested an adjournment to be able to review various telephone records and jailhouse calls that were provided late in discovery. The timing of the production of the telephone records, as well as the sheer volume of the records produced, appears to be a legitimate reason for the request and, although defense counsel did not pick up the telephone records when they became available, there is no indication that defendant was negligent. Defendant requested an adjournment shortly after the materials were produced. Defendant can arguably show good cause for requesting an adjournment with respect to the production of the telephone records. *Coy*, 258 Mich App at 18-19. But even if there was good cause, defendant

---

[1] Defendant appears to characterize defense counsel's objection on the fourth day of trial as a request for adjournment. The record does not show that defense counsel explicitly asked the trial court for an adjournment, but merely stated his concern that he had not been able to review the disc, and ultimately agreed to review the disc over a three-day break in the trial. For the sake of defendant's argument, we will assume that defense counsel's objection to the admission of the computer disc during trial was a request for an adjournment.

has not demonstrated that he was prejudiced by the trial court's decision not to grant an adjournment.[2]

At trial, a police officer testified about the manual extraction of data from defendant's flip-style cell phones. When the matter was discussed on the Friday before trial, the parties were not sure whether the information in the extraction reports would have any evidentiary value. The trial court ruled that defense counsel would be permitted to introduce anything in the extraction records that would aid defendant's defense, and ordered the prosecution to review the records and immediately notify defense counsel of any specific information that the prosecution intended to introduce at trial, or any other information that could be considered exculpatory.

Although the extraction data was produced late, the trial court made sure that defense counsel would have time to review the data, and it also fashioned an arrangement by which defense counsel would be immediately notified of any specific information that the prosecution intended to introduce, as well as any information that could be considered exculpatory. The trial court also agreed to revisit the matter before the start of trial to address the admissibility of any disputed information, yet defense counsel did not raise any issues regarding the admission of the telephone records or renew his request for an adjournment. Even if an adjournment would have been justified, the trial court's decision to instead adopt a procedure by which defense counsel would have an opportunity to review the material before trial and receive prompt notice of any specific information the prosecution intended to introduce, or that might be considered exculpatory, was within the range of reasonable and principled outcomes. Further, defendant has not explained how he was unprepared to address or respond to any specific information in the extraction reports. Indeed, the data involved information obtained from the phones in defendant's possession at the time of his arrest. Therefore, he should not have been surprised by any of that information. Accordingly, defendant has not demonstrated that he was prejudiced by the late production of that information. *Id*.

Additionally, the prosecution at trial offered defense counsel a computer disc that contained telephone records associated with defendant's and Jones's cellular phones. Although such a disc had not previously been provided to the defense, the contents of the disc consisted of the same paper records that the defense had received earlier, but in a different format. Defense counsel objected to the admission of the disc because he was concerned that it might contain new information that had not been included in the records he had received earlier. The trial court

---

[2] Defendant's good cause argument is considerably weaker for the jail call recordings; although there were a large number of recordings, they were provided approximately one and a half months before trial, yet defendant did not move for an adjournment regarding those records until a few days before trial. But even if defendant could demonstrate good cause with respect to the jail call recordings, he cannot demonstrate prejudice; although the number of calls was voluminous, the recordings themselves were not played or admitted at trial. Only the call log of defendant's calls was admitted, and defendant has failed to explain how he was prejudiced by the court's decision not to grant an adjournment because of the allegedly late production of this evidence.

allowed defense counsel to review the disc over a three-day break in the trial, after which he could revisit the matter or recall for cross-examination the prosecution's expert on forensic analysis of cellular call detail records and cell tower mapping. Thereafter, defense counsel recalled the prosecution's expert, but did not raise any further issue with regard to the late production of the disc. Nor was the disc ever discovered to have contained new information not previously produced. We conclude that defendant has not demonstrated that he was prejudiced by the trial court's failure to adjourn the trial based on the production of the computer disc of cellular phone records. *Id*.

## III. DISCOVERY VIOLATIONS

Defendant also argues that the trial court failed to fashion a meaningful remedy for the prosecution's alleged discovery violations, and thereby deprived him of a fair trial. We disagree.

Discovery violations in criminal cases are governed by MCR 6.201(J), which provides:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

Under MCR 6.201(J), we review for an abuse of discretion a trial court's decision regarding an appropriate remedy for a discovery violation. See also *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003); *People v Davie (After Remand)*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). "When determining an appropriate remedy for a discovery violation, 'the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances.' " *People v Jackson*, 292 Mich App 583, 591; 808 NW2d 541 (2011). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

MCR 6.201(A)(6) provides that mandatory discovery in a criminal case includes "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request." When defendant raised the issue of the late production of telephone records before the trial court, the prosecution did not dispute its duty to provide the various records at issue during discovery, but instead argued that it was unable to provide the records any earlier and that defendant still had adequate time to review the materials before trial. Defendant argues that the trial court should have granted an adjournment as a sanction for the prosecution's alleged discovery violation. We disagree.

Although adjournment was one option available to the trial court for addressing the late production of the telephone records, the record discloses that the late production of the telephone

records was not the fault of the prosecution, who promptly made the records available to defense counsel upon receiving them. It is therefore far from clear that any discovery violation occurred. Further, the trial court individually addressed each of the disputed items to make sure that defense counsel would have an opportunity to review them before trial and, in some instances, adopted procedures designed to ensure that defense counsel would receive prompt notice of any materials that the prosecution intended to introduce or that could be considered exculpatory. The trial court's handling of discovery matters fell within the range of reasonable and principled outcomes. Moreover, to be entitled to relief under MCR 6.201(J), a defendant must demonstrate that he was prejudiced by the discovery violation. *Davie*, 225 Mich App at 597-598. As explained earlier, defendant has not demonstrated that he was prejudiced by the late production of the records or by the trial court's failure to grant an adjournment.

## IV. PROSECUTORIAL ERROR[3]

Defendant also argues that during the prosecution's rebuttal closing argument, the prosecution impermissibly commented on defendant's failure to testify, thereby denying defendant a fair trial. Defendant concedes that he did not preserve this issue with an appropriate objection in the trial court. We review an unpreserved claim of prosecutorial error for plain error affecting substantial rights. *People v Abraham,* 256 Mich App 265, 274; 662 NW2d 836 (2003). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Reversal is not required if the prejudicial effect of any improper comment could have been cured by a timely instruction from the trial court. *People v Williams,* 265 Mich App 68, 70-71; 692 NW2d 722 (2005).

The test for prosecutorial error is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Claims of prosecutorial error are decided on a case-by-case basis and the challenged comments must be read in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The prosecution is afforded great latitude during closing argument. It is permitted to argue the evidence and reasonable inferences arising from the evidence in support of its theory of the case. *Id*. at 282. However, the prosecution must refrain from making prejudicial remarks. *Bahoda*, 448 Mich at 283. In *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010), this Court explained:

> A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof. However, a prosecutor's argument that

---

[3] Although defendant uses the historical term "prosecutorial misconduct," we conclude that the particular type of conduct alleged by defendant is better described by the phrase "prosecutorial error" for the reasons set forth in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence. [Footnotes omitted.]

Defendant challenges the following statement made by the prosecution during its rebuttal closing argument:

Defense counsel made a big point about it's hard to show something is not being true without physical evidence. Sure. It's easier to show something is not true with physical evidence. Again, the fact that Mr. Grove didn't take the stand, you cannot hold that against him. That cannot go into your thinking at all — what you can consider is the statement of his that you heard, and he says "I don't go by J and I wasn't there." It's hard to disprove a lie without physical evidence, but it's easier when you do have physical evidence. You had your phone. You were calling Tiffany, you were calling your sister and you were calling Camilla.

We conclude that this remark was not improper or prejudicial. Although the prosecution mentioned that defendant did not testify, the remark was made in the context of describing what evidence the jury could properly consider, namely, defendant's statement and the telephone records. The prosecution never suggested that defendant should have testified or that he had the burden to prove or disprove anything; to the contrary, the prosecution reminded the jury that it "cannot hold [defendant's decision not to testify] against him" and "[t]hat cannot go into your thinking at all."

Further, even if the remark was improper, any perceived prejudice could have been cured by an appropriate instruction upon timely objection. Indeed, even without an objection, the trial court instructed the jury that defendant was not required to prove his innocence, and that defendant had an absolute right not to testify. The trial court's instructions were sufficient to protect defendant's substantial rights. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions.").

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises two additional issues in his Standard 4 brief[4], neither of which have merit.

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to support his convictions. We disagree. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We review the evidence in the

---

[4] A supplemental appellate brief filed *in propria persona* by a criminal defendant under to Supreme Court Administrative Order No. 2004-6, Standard 4.

light most favorable to the prosecution to determine if there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams,* 268 Mich App 416, 419; 707 NW2d 624 (2005). Any conflicts in the evidence must be resolved in favor of the prosecution. *People v Jackson,* 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

To convict a defendant of first-degree premeditated murder, the prosecution is required to prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberated. Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

Defendant does not challenge the fact that a first-degree murder was committed, but argues that the evidence presented at trial was insufficient to identify him as the shooter. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Positive identification by a single witness can be sufficient to support a conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is a question for the trier of fact to resolve and this Court will not resolve the issue anew. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013); *Davis*, 241 Mich App at 700.

Here, two witnesses, Ricky and Smith, identified defendant in court as the shooter. Ricky also identified defendant before trial in a double-blind photographic lineup. Telephone records indicated that Jones's phone communicated with a phone matched to defendant shortly before the shooting. This evidence supports an inference that defendant was the person whom Jones contacted on her cell phone during her argument with Randy.[5] Witnesses also testified that shortly after Randy drove off in Jones's car, another vehicle emerged, traveling fast up the street in pursuit of the car Randy was driving, and then appeared to deliberately crash into Randy's vehicle. The driver of the pursuing vehicle, whom Ricky and Smith both identified as defendant, got out of his vehicle with a gun pointed toward the car driven by Randy, approached Randy, said, "I told you Ni\*\*er," and then fired several gunshots at Randy. While defendant argues that there were inconsistencies between witness descriptions of both the incident and the shooter, and further points out that Ricky did not describe the shooter during his 911 call, it was up to the jury

---

[5] Although the records from Jones's cellular provider did not record the duration of the call, records from defendant's provider showed a call duration of 22 seconds. The prosecution's expert speculated that the discrepancy was due to an error in Jones's carrier's records. Regardless, the records for defendant's phone permitted the jury to find that there was evidence of communication between defendant and Jones just before the shooting. Defendant argues that the telephone records showed that other calls exchanged between him and Jones went to voicemail, but the records still permitted the jury to find that there was communication between them just before the shooting. Again, we resolve conflicts in evidence in favor of the prosecution. *Jackson,* 292 Mich App at 587-588.

to determine whether these inconsistencies affected the credibility of their identification testimony. The telephone records further supported the inference that defendant was in communication with Jones just before the shooting, which allowed the jury to infer that he was the person who arrived on the scene, confronted, and then shot Randy. The evidence of defendant's familial relationship to the father of Jones's children, and the role of defendant's family in assisting in the care of Jones's children, also provided a motive for defendant's conduct in light of the physical confrontation between Randy and Jones.

In support of his argument, defendant refers to matters beyond the trial court record, including alleged statements made to defendant by Jones, an affidavit from Jones prepared after the trial, and Jones's testimony from the preliminary examination. Jones did not testify at trial and the jury was instructed that it could infer that her testimony would not have been favorable to the prosecution. However, defendant cannot rely on evidence that was not presented at trial to argue that the evidence presented at trial was insufficient to support his convictions.

In sum, viewed in the light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity as the shooter. *Wolfe*, 440 Mich at 513-514. Defendant stipulated that at the time of the offense he was a convicted felon who did not have a right to possess a firearm. Given this stipulation and the evidence that defendant shot Randy with a firearm, the evidence also supported defendant's conviction of felon-in-possession. *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). Similarly, the evidence that defendant shot Randy with a firearm in the course of committing a first-degree murder supported defendant's felony-firearm conviction. *People v Avant,* 235 Mich App 499, 505; 597 NW2d 864 (1999).

## B. IDENTIFICATION EVIDENCE

Finally, defendant argues that both Ricky's and Smith's identifications of him were the result of suggestive pretrial identification procedures. We disagree. Because defendant did not challenge the validity of any pretrial identification in an appropriate motion in the trial court, or object to the witnesses' identification testimony at trial, this issue is unpreserved. Therefore, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To qualify as a plain error, an error must be clear or obvious. *Jones*, 468 Mich at 355-356.

It is well established that "[a] photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). Defendant argues that it was impermissibly suggestive for the police to show both Ricky and Smith a single photograph of defendant obtained from Facebook. The record does not factually support this claim. Testimony at trial established that shortly after the shooting, before the shooter was identified, a family member showed a photograph of defendant to Smith, and possibly also to Ricky. That photograph was collected by the police, but there is no evidence that the police used it as part of an identification procedure.

With regard to Ricky's pretrial identification, the officer who prepared the double-blind photographic lineup that was shown to Ricky specifically denied that he used a Facebook

photograph of defendant during this procedure. Ricky identified defendant in the double-blind photographic lineup, but defendant does not argue that this procedure was improperly conducted or was otherwise unduly suggestive. Even if a family member had previously shown Ricky a photograph of defendant, this act by a private citizen was not an impermissible identification procedure that violated defendant's right to due process. See *Gray*, 457 Mich at 111. Defendant has not established any plain error with respect to Ricky's identification.

With regard to Smith's identification, she admitted that a family member had previously shown her a photograph from Facebook, but that the photo was too blurry for her to make an identification. Her first identification of defendant after the shooting occurred at the preliminary examination. That a witness's identification of a defendant occurred during a preliminary examination does not necessarily mean that it cannot be considered unduly suggestive. *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998). The test is whether, in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification. *Id*.

In this case, defendant has not established anything about the circumstances of Smith's identification of him at the preliminary examination to indicate that it occurred under circumstances that were unduly suggestive. At the preliminary examination, Smith denied that she had observed any lineups or photographs of defendant. She admitted that she had looked at Jones's Facebook page to see if Jones had posted anything about the shooting, but she did not download any photographs from Facebook. She also admitted that a family member showed her a photograph and asked her if it depicted the person who had shot Randy, but she testified that she told the person that "the picture was blurry" and contained multiple individuals; she could not state that the man she saw shoot Randy was in the picture. Smith also testified at the preliminary examination that she told the 911 dispatcher that she saw the person who shot Randy, and that she was able to describe his car. She identified defendant as the person she saw shoot Randy. Defendant asserts that Smith identified him only because he was seated at the defense table, but his positioning was never referenced on the record and there was no testimony suggesting that this was a factor in her identification of defendant at the preliminary examination. At trial, Smith testified that she "immediately recognized" defendant when she saw him at the preliminary examination. She described how defendant's appearance at trial was different than it was at the time of the shooting, because defendant had cut his hair. Defendant has not established that Smith's identification of him at the preliminary examination occurred under circumstances that were so impermissibly suggestive as to have led to a substantial likelihood of misidentification. *Colon*, 233 Mich App at 304-305. Accordingly, he cannot establish plain error.

Furthermore, even if Smith's preliminary examination identification was found to be the result of an impermissibly suggestive identification procedure, Smith's in-court identification of defendant at trial would still be permissible if she had an independent basis for her identification. *Gray*, 457 Mich at 114-115. Because defendant did not challenge Smith's identification before the trial court, a record was never fully developed regarding this issue. But it is not clear or obvious from the available record that Smith lacked an independent basis for identifying defendant. At trial, Smith testified that she initially observed the shooter when he drove by her, and that she observed the shooter as he exited his car and shot Randy. She told the 911 dispatcher shortly after the shooting that she saw the shooter. And she testified at trial that she

"immediately recognized" defendant as the shooter when she saw him at his preliminary examination. Because it is not clear or obvious from the record that Smith lacked an independent basis for her identification of defendant, defendant has not established that the admission of Smith's identification testimony at trial constituted plain error.

Affirmed.

/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra