*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER DAMARI LUMPKIN,

Defendant-Appellant.

UNPUBLISHED
December 21, 2023

No. 360252
Genesee Circuit Court
LC No. 19-046031-FC

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to life imprisonment without parole for the first-degree murder conviction, 47 to 90 months' imprisonment for the CCW conviction, and a consecutive two-year prison term for the felony-firearm conviction. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the shooting death of Demarkqule Goodlow following a verbal altercation between Demarkqule and defendant's girlfriend, Tulana Joshua, in the E-Z Stop Liquor store parking lot in Flint, Michigan. The verbal altercation erupted after Demarkqule's girlfriend, Shireka Brackins, almost struck defendant's pickup truck with her vehicle in the parking lot.

Prior to the altercation, Shireka drove Demarkqule, her daughter, and her cousin to the E-Z Stop Liquor store. Demarkqule and Shireka's cousin went into the store, while Shireka and her daughter waited in the car. After they returned to the vehicle, Shireka drove toward the parking lot exit. But before Shireka could exit the lot, Demarkqule requested her to return to the store for another item. Shireka stopped her vehicle approximately five feet from the exit and began backing up. As she was backing up, she heard a vehicle horn. Shireka stopped, maneuvered her vehicle around, and rolled down her window to apologize as she drove around defendant's vehicle. Tulana, who was seated in the passenger seat of defendant's vehicle, yelled and swore at Shireka.

-1-

Shireka drove to the front of the store, parked her car, and Shireka and Demarkqule exited the vehicle to enter the store. Tulana jumped out of defendant's vehicle yelling at Shireka. Demarkqule told Tulana to get back into defendant's vehicle. Tulana remained next to defendant's truck approximately 15 to 20 feet away from Demarkqule. As Demarkqule walked to the front of Shireka's car toward the store, defendant got out of his truck and started shooting at Demarkqule. Defendant continued to shoot at Demarkqule as he walked around the corner of the building towards him. Demarkqule moved away from defendant and fell to the ground. Shireka heard Demarkqule ask defendant to please stop, but defendant kept shooting. Defendant did not say anything to Demarkqule during the incident. Defendant fired 16 bullets at Demarkqule. Thirteen of those bullets struck Demarkqule, who died from his injuries.[1] The incident was captured on surveillance video, which was admitted into evidence and played at trial.

Tulana never saw Demarkqule with a gun, but said she "felt" like he was reaching for a gun because he reached for his waistband. Tulana admitted that she continued to yell at Demarkqule even after she believed that he was reaching for a gun. Tulana denied saying anything to defendant. She knew that defendant was carrying a gun, but stated that she was "shocked" when defendant got out of the truck and started shooting. Shireka testified that Demarkqule did not take out a gun or display it, but stated that a gun fell out of Demarkqule's right pocket after he was shot.

After the shooting, defendant and Tulana returned to defendant's truck and left the scene without discussing the incident. They did not notify the police, emergency personnel, or anyone else about the shooting.

The defense theory at trial was that defendant observed Demarkqule reaching toward his waistband and, believing he was reaching for a gun, shot Demarkqule in self-defense. Defendant requested the statutory self-defense instruction. Defendant argued that if the trial court did not instruct the jury on statutory self-defense, he was entitled to a common law self-defense instruction. Defendant also requested the M Crim JI 16.9 ("Voluntary Manslaughter as a Lesser Included Offense of Murder") instruction, arguing that manslaughter required "the same type of mental situation that would be in the self-defense idea." The prosecutor agreed that defendant met the standard for a self-defense instruction, but requested a special instruction with self-defense language from *People v Guarjardo*, 300 Mich App 26; 832 NW2d 409 (2013). The prosecutor further argued that there was no evidence of adequate provocation to warrant a manslaughter instruction. The trial court found that the evidence did not support the voluntary manslaughter instruction. The trial court instructed the jury on self-defense and defense of others in accordance with M Crim JI 7.15 and 7.21. It also gave a special self-defense instruction with language from *Guarjardo*. The jury found defendant guilty of first-degree premeditated murder, CCW, and felony-firearm. Defendant was sentenced as indicated. Defendant now appeals.

---

[1] The medical examiner determined that Demarkqule died of multiple gunshot wounds, with the manner of death being homicide.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by denying his request for a jury instruction on voluntary manslaughter, and by granting the prosecution's request for a special instruction regarding self-defense. We disagree.

We review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But a trial court's determination whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). We also review de novo the constitutional question whether a defendant was denied his constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

"It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law." *People v Everett*, 318 Mich App 511, 529; 899 NW2d 94 (2017) (cleaned up). "A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "The instruction to the jury must include all elements of the crime charged . . . and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).

### A. FAILURE TO INSTRUCT ON VOLUNTARY MANSLAUGHTER

"[A] jury instruction on a necessarily included lesser offense is appropriate if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Yeager* 511 Mich 478, 490; ___ NW2d ___ (2023) (cleaned up).

Our Supreme Court has defined common-law voluntary manslaughter as:

[T]he act of killing, though intentional, [is] committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition. [*People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003) (cleaned up).]

To establish voluntary manslaughter, it must be shown "that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* "[F]or the provocation to be adequate it must be that which would cause a reasonable person to lose control." *People v Mitchell*, 301 Mich App 282, 287; 835 NW2d 615 (2013) (cleaned up). "[B]oth murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Mendoza*, 468 Mich at 540. But malice, which is absent from manslaughter, is the distinguishing element of murder. *Id.* In

voluntary manslaughter, "the presence of provocation and heat of passion" negates malice. *Id*. "Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991).

Defendant argues that our Supreme Court's decision in *Yeager* supports his argument that he was entitled to a jury instruction on voluntary manslaughter. *Yeager* involved a shooting following a series of events in which the victim physically assaulted the defendant, took her car, tried to run her over, and repeatedly threatened to kill her and a neighbor. *Yeager*, 511 Mich at 484-486. The *Yeager* Court analyzed whether a manslaughter instruction would have been appropriate in the context of an ineffective-assistance-of-counsel claim. Defense counsel explained at the *Ginther*[2] hearing that he did not request a manslaughter instruction because the defendant was also asserting self-defense, which counsel believed was legally inconsistent with a theory of voluntary manslaughter. *Id.* at 491. The Court determined that this reasoning was based on a misunderstanding of the law that only manslaughter required an intentional act. *Id.* The Court noted that both manslaughter and self-defense require a finding that the defendant acted intentionally. *Id.* The Court explained that "the distinction between murder and voluntary manslaughter is the element of malice, which in voluntary manslaughter is negated by the presence of provocation and heat of passion." *Id.* (cleaned up). The Court further found that the defendant was prejudiced by counsel's failure to request an instruction on voluntary manslaughter because the evidence would have supported the instruction. *Id.* The Court explained:

> The testimony presented at trial reflected that defendant's shooting of Brooks was the culmination of a series of events during which Brooks physically assaulted defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill defendant and Borom, the neighbor who assisted her. Defendant testified that she feared for her life. At the *Ginther* hearing, when asked about the moments leading up to the shooting, she explained, "I just remembered bein' scared. I don't remember details, like, walkin' towards him, or anything like that. And when I seen the video, I didn't even see myself, or remember shootin' as many times as they say I did." Borom also testified that defendant was hysterical and crying when she returned to his vehicle after the shooting. A jury could reasonably conclude that the combination of physical and verbal threats from Brooks throughout this unbroken chain of events stoked defendant's passions so that she acted out of heightened emotion rather than reason in shooting Brooks. [*Id.* at 491-492.]

In this case, unlike in *Yeager*, defense counsel requested instructions on both self-defense and voluntary manslaughter. The trial court did not find that self-defense and voluntary manslaughter were incompatible. Instead, the court concluded that, regardless of defendant's assertion of self-defense, a rational view of the evidence did not support an instruction on voluntary manslaughter because there was no evidence that defendant acted in the heat of passion caused by

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

adequate provocation. The court stated that "the adequate cause has to be something different than self-defense."

We find that a rational view of the evidence in this case does not support a finding that defendant's actions resulted from provocation that would cause a reasonable person to lose control and act in the heat of passion. The evidence showed that Tulana was angry that Shireka had almost hit defendant's truck. Tulana exited the truck to yell at Shireka. When Demarkqule exited Shireka's car to go back into the store, he and Tulana exchanged words. According to Tulana, she and Demarkqule were swearing at each other. Shireka testified that Demarkqule told Tulana to get back into defendant's vehicle. Defendant was not involved in the verbal exchange between Demarkqule and Tulana; he remained seated in his vehicle while Demarkqule and Tulana argued. Although Tulana claimed that she saw Demarkqule reach for his waistband, that did not alter her conduct because she continued to argue with Demarkqule. Tulana never saw Demarkqule take out his gun or display it. Shireka also testified that Demarkqule did not take out his gun or display it. Tulana denied saying anything to defendant and testified that she was shocked when defendant suddenly got out of his truck and immediately began shooting. After the shooting, Tulana and defendant got back into defendant's truck and left without further discussing the incident. As Tulana explained, "it happened and then we just left it at that." There was no evidence that defendant was in a heightened emotional state either before or after the shooting.

Moreover, the surveillance video does not depict any circumstances that would cause a reasonable person in defendant's situation to lose control. See *Mitchell*, 301 Mich App at 287. The surveillance video shows that as soon as defendant exited his truck, he ran toward and shot at Demarkqule. The video also shows Demarkqule moving away from defendant and falling to the ground while defendant continued to shoot.

The trial court did not abuse its discretion in determining that M Crim JI 16.9 was not applicable to the facts of the case. Accordingly, the trial court did not err by denying defendant's request for an instruction on voluntary manslaughter.

## B. SPECIAL INSTRUCTION ON SELF DEFENSE

Defendant further argues that the trial court erred when instructing the jury on self-defense and defense of others. Defendant asserts that the added instruction requested by the prosecution was confusing, effectively added additional requirements for defendant to establish self-defense, and lessened the prosecution's burden of disproving the defense. We disagree.

Defendant claimed that there was evidence that he acted in self-defense when he quickly reacted after seeing Demarkqule reach toward his waistband, believing that he was reaching for a gun. Tulana also claimed that she thought that Demarkqule was reaching for his waistband to pull out a gun. Based on this evidence, the trial court instructed the jury on self-defense and defense of others in accordance with M Crim JI 7.15 and 7.21. The trial court followed those instructions with this instruction requested by the prosecutor:

> A defendant does not act in justifiable [self-defense / defense of others] when he uses excessive force or when the defendant is the initial aggressor.

The prosecutor's requested instruction accurately advised the jury on the law of self-defense and was supported by a rational view of the evidence. The instruction is supported by *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013), in which this Court observed that, "[i]n general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." See also *People v Leffew*, 508 Mich 625, 654; 975 NW2d 896 (2022) (noting that "a defendant cannot assert the affirmative defenses of self-defense or defense of others if they are the initial aggressor"). Further, there was evidence from which the jury could find that defendant was not justified in claiming self-defense or defense of others because his use of deadly force was excessive or because he was the initial aggressor. The surveillance video showed defendant shooting and chasing Demarkqule. The forensic evidence revealed that defendant fired 16 shots at Demarkqule, with 13 of those shots hitting Demarkqule. The video also showed defendant standing over and shooting Demarkqule after Demarkqule fell to the ground. Shireka testified that she heard Demarkqule ask defendant to please stop, but defendant kept shooting.

Defendant argues that it was improper to give the prosecutor's requested instruction because the instruction failed to define the terms "initial aggressor" and "excessive force." These words are subject to ordinary comprehension and are self-explanatory. A trial court's failure to define a term which is generally familiar to a layperson and is susceptible to ordinary comprehension does not require reversal. *People v Knapp*, 244 Mich App 361, 377; 624 NW2d 227 (2001).

This Court "must consider the instructions as a whole, rather than piecemeal, to determine whether any error occurred." *Kowalski*, 489 Mich at 501. Viewing the trial court's instructions as a whole in this case, we find that they accurately and fairly included all elements of the charged offenses, as well as the law on self-defense and defense of others. The trial court's decision to give the prosecutor's requested instruction did not deprive defendant of his right to a properly instructed jury.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence of premeditation and deliberation to support his conviction of first-degree premeditated murder. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). We must view the evidence in a light most favorable to the prosecution and determine whether there was sufficient evidence for a rational trier of fact to find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).

> [T]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime. [*Id*. (citation omitted, alteration in original).]

To support a conviction of first-degree premeditated murder, "the prosecution must establish beyond a reasonable doubt a '[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.' " *Id*. at 239-240, quoting MCL 750.316(1)(a). "[T]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Oros*, 502 Mich at 240 (cleaned up). To premeditate "is to think about beforehand," whereas to deliberate "is to measure and evaluate the major facets of a choice or problem." *Id*. (cleaned up). When considering a sufficiency-of-the-evidence issue, we must inquire "whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." *Id*. at 242 (cleaned up).

> Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a "second look." That is some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look. [*Id*. (cleaned up).]

Premeditation and deliberation may be inferred from the circumstances surrounding the killing, including through evidence of the following factors "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

Defendant claims that there was insufficient evidence of premeditation and deliberation to support the jury verdict. He argues that the evidence showed that he reacted suddenly and impulsively, without time for reflective thought, because he thought Demarkqule was reaching toward his waistband for a weapon. But conflicting testimony was presented whether Demarkqule actually reached toward his waistband before he was shot. Viewed in a light most favorable to the prosecution, the evidence supported an inference that defendant had an opportunity to think about his actions while sitting in his vehicle during the initial verbal altercation between Tulana and Demarkqule, i.e., premeditate, and to consider and evaluate his choices, i.e., deliberate. Premeditation may also be established from "the circumstances of the killing itself[.]" *Anderson*, 209 Mich App at 537. There was evidence that defendant immediately shot at and chased Demarkqule upon exiting his vehicle. There was also evidence that Demarkqule was moving away from defendant as defendant was shooting at him, defendant continued shooting Demarkqule after he fell to the ground, defendant fired 16 shots at Demarkqule, and Demarkqule had 13 gunshot wounds. Defendant's conduct after the incident is another factor that may establish premeditation. *Id*. There was testimony that, after the shooting, defendant returned to his truck with Tulana and left the parking lot without further discussing what happened or making any effort to call the police or obtain emergency assistance.

The jury clearly discredited the testimony offered in support of defendant's self-defense theory. Instead, the jury determined that the evidence and testimony was credible to convict defendant of first-degree premeditated murder. We will not interfere with the jury's determination of the weight of the evidence or the credibility of the witnesses. *People v Ortiz*, 249 Mich App 297, 300-301; 642 NW2d 417 (2001). Applying these standards, there was sufficient evidence to

-7-

enable the jury to find beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder. We will not disturb that determination.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel